

DA 07-0339

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 359

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

TIMOTHY SCOTT NELSON,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Pondera, Cause No. DC 2006-009
Honorable Laurie McKinnon, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Justin B. Lee, Burk, Lee & Bieler, PLLC, Choteau, Montana

          Colin M. Stephens, John E. Smith Law Offices, Missoula, Montana

      For Appellee:

          Hon. Mike McGrath, Montana Attorney General, Tammy Plubell,
Assistant Attorney General, Helena, Montana

          Mary Ann Ries, Pondera County Attorney, Conrad, Montana

      For Amicus Curiae Patients and Families United and American Civil Liberties
Union Foundation of Montana:

          Elizabeth L. Griffing, ACLU of Montana Foundation, Missoula, Montana

          Craig Shannon, Patients and Families United, Missoula, Montana

Submitted on Briefs:  May 21, 2008

Decided:  October 28, 2008

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Timothy Scott Nelson (Nelson) appeals two sentencing conditions imposed on him in the District Court of the Ninth Judicial District Court, Pondera County. We reverse the imposition of the challenged sentencing conditions and remand for further proceedings consistent with this Opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    Sometime in April 2006, Pondera County Deputy Sheriff Carl Suta (Deputy Suta) was contacted by a citizen informant who was known to Deputy Suta. The citizen informant stated that s/he had been at a house in Conrad, Montana, when s/he inadvertently went into a basement room containing several marijuana plants. After receiving this information, Deputy Suta and Agent Mark Hilyard (Agent Hilyard) of the Montana Department of Justice went to investigate. They observed a basement window covered with black plastic and a PVC pipe protruding from the basement, both of which indicated to Agent Hilyard the possibility that the basement was being used as a marijuana grow room.

¶3    On April 10, 2006, Agent Hilyard and Deputy Suta collected garbage from the residence. An examination of the garbage revealed Zig-Zag Premium Cigarette tubes, a Jiffy greenhouse expandable pellet container, a marijuana stem and burnt toothpick, and gold tinfoil that contained marijuana stems and seeds. The officers field tested these items and determined they were consistent with the use and production of marijuana plants. The garbage search also turned up mail with Nelson's name on it, and the names of two other residents of the house, Christine Hovde (Hovde) and Michelle Murray

3

(Murray). Deputy Suta was familiar with Murray and knew that she had previously been involved with law enforcement. In December 2006, Murray had offered to provide information to a Teton County deputy about the existence of a methamphetamine lab, but later retracted her offer.

¶4 On April 24, 2006, Deputy Suta obtained a search warrant for the residence. A search of the house turned up evidence of a marijuana grow operation. While conducting this search, officers also found several items which suggested a possible clandestine methamphetamine lab, including a couple of cardboard boxes labeled "extra lab equipment" or "lab shit," and rubber gloves stained with iodine. Officers then stopped their search and obtained a second search warrant. As officers were leaving the house, Murray pulled into the driveway.

¶5 Upon conducting a search of the house pursuant to the second warrant, officers uncovered a significant amount of evidence indicating that the residents of the house were cooking methamphetamine there. Additionally, several marijuana pipes, seeds, and containers of marijuana were found in the house, along with a bottle of morphine. It was also discovered that Hovde's two school-aged children lived in the house and had access to all levels of the house, and that their clothing was mixed in with various components of the methamphetamine lab. Murray subsequently agreed to talk to the officers after being arrested and given a *Miranda* warning. She admitted to using marijuana, but denied any knowledge of the existence of a methamphetamine lab.

¶6 Based on the evidence obtained pursuant to the two searches, the Pondera County Attorney charged Nelson with the following seven counts on May 16, 2006: Count I,

4

operation of unlawful clandestine laboratory; Count II, criminal possession of precursors to dangerous drugs; Count III, criminal possession or manufacture of dangerous drugs; Count IV, criminal endangerment; Count V, misdemeanor criminal possession of dangerous drugs; Count VI, felony criminal possession of dangerous drugs; and Count VII, criminal possession of drug paraphernalia.

¶7 Nelson suffers from a degenerative disc disorder and has had four surgeries on his back. These injuries were sustained by Nelson when he was thrown from a vehicle in an accident involving a drunk driver. Nelson had applied with the Montana Department of Public Health and Human Services (DPHHS) to be a qualified patient in Montana's medical marijuana program (Program) and to be entitled to the lawful use of medical marijuana. The statutes governing the Program are set forth in the Medical Marijuana Act (MMA), Title 50, chapter 46, MCA, which implements a voter initiative approved on November 2, 2004. Under the MMA, it is legal for citizens to use medical marijuana in order to treat a variety of "debilitating medical conditions," provided they have received written certification from a physician that the potential benefits of medical marijuana use would outweigh the health risks, they are accepted in the Program by DPHHS, and otherwise comply with the requirements of the MMA. Sections 50-46-102 and -103, MCA. The debilitating conditions for which medical marijuana may be used are specifically defined in the MMA as follows:

> (a) cancer, glaucoma, or positive status for human immunodeficiency virus, acquired immune deficiency syndrome, or the treatment of these conditions;
> (b) a chronic or debilitating disease or medical condition or its treatment that produces one or more of the following:

5

(i) cachexia or wasting syndrome;

(ii) severe or chronic pain;

(iii) severe nausea;

(iv) seizures, including but not limited to seizures caused by epilepsy; or

(v) severe or persistent muscle spasms, including but not limited to spasms caused by multiple sclerosis or Crohn's disease; or

(c) any other medical condition or treatment for a medical condition adopted by the department by rule.

Section 50-46-102(2)(a) through (c), MCA.

¶8 Furthermore, the MMA specifically defines "medical use" as,

[T]he acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marijuana or paraphernalia relating to the consumption of marijuana to alleviate the symptoms or effects of a qualifying patient's debilitating medical condition.

Section 50-46-102(5), MCA. Additionally, the MMA further provides as follows:

(1) A qualifying patient or caregiver who possesses a registry identification card issued pursuant to 50-46-103 *may not be arrested, prosecuted, or penalized in any manner or be denied any right or privilege, including but not limited to civil penalty or disciplinary action by a professional licensing board or the department of labor and industry, for the medical use of marijuana* or for assisting in the medical use of marijuana if the qualifying patient or caregiver possesses marijuana not in excess of the amounts allowed in subsection (2).

(2) A qualifying patient and that qualifying patient's caregiver may not possess more than six marijuana plants and 1 ounce of usable marijuana each.

Section 50-46-201(1) and (2), MCA (emphasis added).

¶9 On December 8, 2006, subsequent to being charged with the drug-related counts, Nelson was accepted by DPHHS into the Program, placed on DPHHS' confidential registry, and issued an identification card indicating his participation in the Program. On February 7, 2007, Nelson entered into a plea agreement with the State. In exchange for

6

pleading nolo contendere to Count III, criminal possession or manufacture of dangerous drugs, Nelson received a three-year deferred imposition of sentence, and the State agreed to dismiss the remaining six counts. On February 26, 2007, Nelson appeared before the District Court and formally pled no contest to the charge in Count III.

¶10 During the sentencing hearing, the District Court expressed concerns about Nelson's use of medical marijuana, particularly given that Nelson apparently acted as a parent to Hovde's two school-aged children. The District Court asked Nelson's attorney Justin B. Lee (Lee) how Nelson participated in the Program. Lee explained that Nelson submitted an extensive application to DPHHS describing his chronic pain condition, and that upon acceptance into the Program he was allowed to use medical marijuana under the provisions of the MMA. However, Lee explained that a physician could not actually prescribe marijuana due to federal licensing restrictions. The State offered that it had spoken to officials at the Department of Corrections, who opined that they would not allow Nelson to smoke marijuana while under their supervision, but would allow him to use the pill form of marijuana, Dronabinol, as prescribed by a physician. Lee argued that such a restriction on Nelson's use of medical marijuana would be cost prohibitive for him due to the expense of Dronabinol, and was thus contrary to the intent behind the passage of the MMA, which was to allow individuals to obtain medical relief through the use of medical marijuana in a manner that was cost-effective.

¶11 The District Court was unpersuaded by Lee's argument and concluded it was in the best interests of the children to restrict Nelson to the prescription pill form of marijuana during the deferred term of his sentence. The District Court acknowledged the

7

legitimacy of the MMA, but believed that restricting Nelson's use of medical marijuana in this manner would be less intrusive to family members and help him be a better parent to the children.

¶12   Nelson was ultimately given a three-year deferred imposition of sentence subject to twenty conditions. Condition No. 9, as set forth in the Judgment and Sentence, reads in part as follows:

> The Defendant shall comply with all city, county, state, federal laws, ordinances, and conduct himself as a good citizen.

¶13   Condition No. 10 reads as follows:

> The Defendant will not possess or use illegal drugs or any drugs unless prescribed by a licensed physician. Although the Defendant states he has a medical use exception which allows him to possess marijuana, the Defendant may not possess marijuana except in pill form and only then by prescription from a licensed physician. The prescription may not be more than 6 months old. The Defendant may not have a prescription older than 6 months in his possession. The Defendant will not be in control of or under the influence of illegal drugs, nor will he have in his possession any drug paraphernalia.

¶14   Nelson now timely appeals the imposition of these two sentencing conditions. Nelson maintains the District Court imposed an illegal sentencing condition in Condition No. 10 by restricting him to the use of medical marijuana in prescription pill form. He also maintains that the District Court exceeded its authority in requiring him to obey all federal laws in Condition No. 9, because federal law, in particular the Controlled Substances Act (CSA), codified at 21 U.S.C. § 801, prohibits the possession of marijuana and does not provide an exception for the use of medical marijuana pursuant to state law. *See* 21 U.S.C. §§ 841, 844. Nelson argues that the District Court is improperly enforcing

8

federal law against him by restricting him from the lawful use of medical marijuana under state law. Amici Curiae American Civil Liberties Union Foundation of Montana and Patients and Families United (collectively Amici), join Nelson in seeking a reversal of these sentencing conditions. The State urges us to affirm these conditions, arguing that they do not constitute an illegal sentence and that the District Court did not abuse its discretion in imposing them.

¶15 On December 27, 2007, after the issues before the Court were fully briefed by the parties, the State filed a motion to strike material contained in Nelson's reply brief on the grounds that it was outside the record. Specifically, the State sought to strike from the reply brief two appendices and supporting discussion whereby Nelson sought to "correct" certain information contained in the pre-sentence investigation (PSI). We subsequently took the motion under advisement. Because the disputed portions of Nelson's reply brief played no role in the disposition of the matter before us, the State's motion to strike is rendered moot. Thus, we restate the issues on appeal as follows:

¶16 **Issue One:** *Did the District Court exceed its statutory authority by requiring Nelson to comply with Condition No. 10 during the term of his deferred sentence?*

¶17 **Issue Two:** *Did the District Court exceed its authority when it imposed Condition No. 9 and required Nelson to comply with federal law which prohibits the possession of marijuana and does not provide an exception for the use of medical marijuana pursuant to state law?*

9

¶18    **Issue Three:** *Did the District Court violate the prohibition on cruel and unusual punishment under the United States Constitution and Article II, Section 22 of the Montana Constitution in imposing Condition No. 10 on Nelson's deferred sentence?*

**STANDARD OF REVIEW**

¶19    We review the legality and propriety of sentencing conditions under the two-prong standard as set forth in *State v. Ashby*, 2008 MT 83, 342 Mont. 187, 179 P.3d 1164.  First, we review a sentencing condition for legality.  *Ashby*, ¶ 9.  This inquiry requires us to consider whether the district court lacked statutory authority to impose the condition, whether the condition falls outside the parameters set by the applicable sentencing statutes, or whether the district court did not adhere to the affirmative mandates of the applicable sentencing statutes.  *State v. Brotherton*, 2008 MT 119, ¶ 10, 342 Mont. 511, ¶ 10, 182 P.3d 88, ¶ 10.  This presents a question of law which we review de novo. *Brotherton*, ¶ 10.

¶20    Second, "because sentencing statutes authorize sentencing judges to impose conditions on deferred or suspended sentences that constitute 'reasonable restrictions or conditions considered necessary for rehabilitation or for the protection of the victim or society,' the 'reasonableness' of such conditions will be reviewed for an abuse of discretion."  *Ashby*, ¶ 9 (quoting § 46-18-201(4)(n), MCA (2005)).  An abuse of discretion occurs when a district court acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, in view of all the circumstances, ignoring recognized principles resulting in substantial injustice.  *Schuff v. Jackson*, 2008 MT 81, ¶ 15, 324 Mont. 156, ¶ 15, 179 P.3d 1169, ¶ 15.

10

## DISCUSSION

**Issue One:** *Did the District Court exceed its statutory authority by requiring Nelson to comply with Condition No. 10 during the term of his deferred sentence?*

Nelson argues the District Court imposed an illegal sentence upon him by requiring him to abide by Condition No. 10 during his deferred sentence. Nelson asserts that in enacting the MMA, the voters of Montana sought to provide qualifying patients with a cost-effective way to manage pain and treat debilitating conditions, and that limiting him to the use of marijuana in a prescription pill form defeats that purpose and is cost-prohibitive. Nelson argues that under the MMA, his use of medical marijuana should be treated as a prescription drug recommended by a doctor and a lawful means of treating a debilitating condition. Nelson claims his argument in this regard is supported by *People v. Tilehkooh*, 7 Cal. Rptr. 3d 226 (Cal. App. 3 Dist 2003).

Additionally, Nelson claims Condition No. 10 constitutes an illegal sentence because it denies him the right to use medical marijuana, contravening § 50-46-201(1), MCA. Nelson maintains that the District Court erroneously treated his use of medical marijuana in the home as though it was illegal, and by unduly restricting his use of medical marijuana it prevented him from improving and rehabilitating himself and needlessly required him to suffer physical pain.

In this connection, Amici point out that the District Court did not state that it was attempting to protect the children from second hand smoke or the effects of marijuana, nor did it attempt to set conditions concerning when, where, and how Nelson could smoke, eat, or vaporize marijuana. Instead, the District Court issued a blanket

11

prohibition on the use of marijuana in its plant form. Moreover, Amici note that the MMA does place limitations upon the use of medical marijuana, but does not prohibit qualifying patients who are under state supervision from using medical marijuana. The provision of the MMA referenced by Amici reads as follows:

(1) This chapter does not permit:
    (a) any person to operate, navigate, or be in actual physical control of any motor vehicle, aircraft, or motorboat while under the influence of marijuana; or
    (b) the smoking of marijuana:
    (i) in a school bus or other form of public transportation;
    (ii) on any school grounds;
    (iii) in any correctional facility; or
    (iv) at any public park, public beach, public recreation center, or youth center.
    (2) Nothing in this chapter may be construed to require:
    (a) a government medical assistance program or private health insurer to reimburse a person for costs associated with the medical use of marijuana; or
    (b) an employer to accommodate the medical use of marijuana in any workplace.

Section 50-46-205, MCA.

Because of this provision, Amici maintain that once the District Court decided to defer Nelson's sentence, and not sentence him to a correctional facility, it was without authority to carve a new exception to the MMA and prevent Nelson from using medical marijuana in accordance with the MMA while he was under state supervision.

¶25 The State urges us to affirm the District Court. As an initial matter, the State notes that Nelson was not a participant in the Program at the time of his arrest or when the State filed the Information against him. The State also notes that Nelson admitted in the PSI that he had used marijuana illegally for years, and suggests that Nelson only elicited the

protection of the MMA "after he got caught." In this regard, the State argues that *Tilehkooh* is distinguishable and that *People v. Bianco*, 113 Cal. Rptr. 2d 392 (Cal. App. 3 Dist. 2001) applies. In *Bianco*, a California Court of Appeals held that a trial court acted within its discretion when it imposed a sentencing condition preventing a defendant from using medical marijuana while on probation under California's version of the MMA, the Compassionate Use Act of 1996 (CUA), Cal. Health and Safety Code Ann. § 11362.5 (West 1996). *Bianco*, 113 Cal. Rptr. 2d at 397. The State urges us to adopt *Bianco*'s reasoning to the effect that "state law providing for the medical use of marijuana does not abrogate the trial court's traditional discretion to impose appropriate conditions of probation," including a restriction on the use of medical marijuana. *Bianco*, 113 Cal. Rptr. 2d at 395.

¶26 The State further argues that Nelson's past history, along with his conviction and the facts of his case, suggest that he may be addicted to marijuana. Thus, the District Court was within its discretion to prohibit him from smoking marijuana in furtherance of his rehabilitation. Similarly, the State argues that the District Court had legitimate reasons to be concerned for the safety of the children, because in addition to manufacturing marijuana in his home, Nelson had the precursors to a methamphetamine laboratory. These facts suggest that Nelson does not exercise good judgment as a parent, and provided another basis for the District Court to restrict him to the use of marijuana in prescription pill form. Additionally, the State argues that the MMA itself evinces a concern for the safety of children in light of the fact that marijuana is generally illegal, by prohibiting the use of medical marijuana in public places where children congregate.

(*See* ¶ 24.) Thus, under the circumstances of the case, the District Court acted within its discretion in imposing Condition No. 10 out of concern for the children and to ensure that Nelson exercised better judgment as their parent.

¶27 Under *Ashby*, the threshold question is whether the imposition of Condition No. 10 constituted an illegal sentencing condition. *Ashby*, ¶ 9. In light of the plain language of the MMA, we conclude that the District Court exceeded its statutory authority in imposing Condition No. 10. The District Court unlawfully denied Nelson the right and privilege to use a lawful medical treatment for relief from a debilitating condition under the MMA. Thus, we reverse the imposition of this condition and remand for further proceedings.

¶28 In reaching this conclusion, we find the decision of the California Court of Appeals in *Tilehkooh* persuasive. Tilehkooh, a participant in California's medical marijuana program, was convicted of misdemeanor possession of marijuana, and subsequently found to have violated a probation condition on the basis that he possessed and was using marijuana. *Tilehkooh*, 78 Cal. Rptr. 3d at 230-31. The CUA, like the MMA, contained a provision that prevented users of medical marijuana from being " 'subject to criminal prosecution or sanction.' " *Tilehkooh*, 7 Cal. Rptr. 3d at 229 n. 3 (quoting Cal. Health and Safety Code Ann. § 11362.5(a)(B) (West 1996)). In light of the plain language of the CUA, the California Court of Appeals reversed the conviction for the probation violation primarily because a probation condition which prohibited the lawful use of a prescription drug could not be said to serve a "rehabilitative purpose." *Tilehkooh*, 7 Cal. Rptr. 3d at 229. As stated by the court in *Tilehkooh*,

14

> A probation condition, even if it is not a violation of the criminal law, must be reasonably related to the crime of which the defendant was convicted or to future criminality. However, it ordinarily cannot be said that the treatment of an illness by lawful means is so related.

*Tilehkooh*, 7 Cal. Rptr. 3d at 234 (quotation omitted).[1]

¶29 Simply put, the MMA, like the CUA, takes the possession and use of medical marijuana "and puts it in a special category apart from other legal acts, such as the use of alcohol, that can properly be made a condition of probation." *Tilehkooh*, 7 Cal. Rptr. 3d at 237 (Morrison, J., concurring). When a qualifying patient uses medical marijuana in accordance with the MMA, he is receiving lawful medical treatment. In this context, medical marijuana is most properly viewed as a prescription drug. *See People v. Mower*, 49 P.3d 1067, 1082 (Cal. 2002) (analogizing the use of medical marijuana under the CUA to the use of prescription drugs).

¶30 The State argues that the prescription pill limitation in Condition No. 10 is reasonable and lawful. We disagree. As noted above, "medical use" under the MMA specifically contemplates "cultivation" and the use of "paraphernalia relating to the consumption of marijuana." Section 50-46-102(5), MCA. Moreover, § 50-46-201(2), MCA, provides that a qualifying patient may possess up to six marijuana plants and one ounce of usable marijuana. In limiting Nelson to the ingestion of marijuana in pill form, and requiring him to have a physician's prescription to do so, the District Court ignored

---

[1] In *Tilehkooh* the California Court of Appeals appears to have implicitly overruled the holding of *Bianco*. *See Tilehkooh*, 7 Cal. Rptr. 3d at 236. Thus the State's reliance on *Bianco* is misplaced.

15

the clear intent of the voters of Montana that a qualifying patient with a valid registry identification card be lawfully entitled to grow and consume marijuana in legal amounts.

¶31 Nelson admittedly has a past history of illegal drug use, and has pled guilty to possessing the precursors of a methamphetamine lab. Thus, an order precluding him from using marijuana would presumptively satisfy the nexus requirement for sentencing conditions. However, the MMA states unequivocally that a qualified patient in the Program "may not be arrested, prosecuted, or penalized in any manner *or be denied any right or privilege*, including but not limited to civil penalty or disciplinary action by a professional licensing board or the department of labor and industry, *for the medical use of marijuana . . . .*" Section 50-46-201(1), MCA (emphasis added). The MMA simply does not give sentencing judges the authority to limit the privilege of medical use of marijuana while under state supervision.

¶32 We recognize that some find the very idea of medical marijuana a hard pill to swallow, given that use of marijuana is generally illegal and has been so for some time. However, as Judge Alex Kozinski stated in his concurrence in *Conant v. Walters*, 309 F.3d 629 (9th Cir. 2002), while the allowance of medical marijuana "may seem faddish or foolish . . . the public record reflect[s] a legitimate and growing division of informed opinion on this issue. A surprising number of health care professionals and organizations have concluded that the use of marijuana may be appropriate for a small class of patients who do not respond well to, or do not tolerate, available prescription drugs." *Conant*, 309 F.3d at 640-41 (Kozinski, J., concurring) (quotation omitted). Simply put, whether or not medical marijuana is ultimately a good idea is not the issue before the Court.

16

Instead, our concern is solely with the plain language of the MMA and the sentencing authority of the District Court in this case.

¶33 While we conclude that a district court does not have the statutory authority to impose a sentencing condition which denies a qualifying patient the right to use medical marijuana in accordance with the MMA, this is not to say that there can be no restrictions on lawful medical marijuana use. A sentencing court is free to impose limitations on the place of use, and may certainly order that marijuana not be used in the presence of children. Moreover, just as a sentencing court may impose a condition that prohibits a defendant from *abusing* lawfully-obtained prescription drugs, so may a court prohibit a defendant from abusing medical marijuana. However, an outright ban on the "medical use" of marijuana as contemplated by the MMA exceeds the statutory authority of the District Court. Therefore, we reverse the imposition of Condition No. 10.

¶34 **Issue Two:** *Did the District Court exceed its authority when it imposed Condition No. 9 and required Nelson to comply with federal law which prohibits the possession of marijuana and does not provide an exception for the use of medical marijuana pursuant to state law?*

¶35 Nelson maintains that the District Court exceeded its authority when it imposed Condition No. 9 on his deferred sentence, because it required him to obey all federal laws, including the CSA which makes it a federal offense to possess marijuana and does not provide an exception for medical marijuana use in accordance with state law. Nelson argues that by imposing this condition, the District Court was indirectly enforcing federal law and contravening state law. Nelson argues that state officials are not required to

17

enforce federal laws and that "as much as the federal government may prefer that Montana keep medical marijuana illegal, it cannot force the state to do so."

¶36   We agree with Nelson that the District Court also exceeded its authority in imposing Condition No. 9, insofar as it could be invoked to support a revocation of his deferred sentence in the face of contrary state law.  It is an axiom of federalism under the U.S. Constitution that Congress does not have the authority to commandeer the processes of states "by directly compelling them to enact and enforce a federal regulatory program." *New York v. United States*, 505 U.S. 144, 161, 112 S. Ct. 2408, 2420 (1992) (quotation omitted).   This principle was forcefully articulated by the United States Supreme Court in *Printz v. United States*, 521 U.S. 898, 117 S. Ct. 2365 (1997), as follows:

> Congress cannot compel the States to enact or enforce a federal regulatory program. . . .   The Federal Government may neither issue directives requiring the States to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program.  It matters not whether policymaking is involved, and no case-by-case weighing of the burdens or benefits is necessary; such commands are fundamentally incompatible with our constitutional system of dual sovereignty.

*Printz*, 521 U.S. at 935, 117 S. Ct. at 2384.

¶37   As Judge Kozinski noted in his concurrence in *Conant*, the tension created between the criminalization of marijuana on the federal level, and its legalization for medical use in states such as Montana, may indeed run afoul of this "commandeering" doctrine.  *Conant*, 309 F.3d at 645 (Kozinski, J., concurring).  Moreover, under principles of federalism as expressed in the U.S. Constitution, "states must be free to develop a

variety of solutions to problems and not be forced into a common, uniform mold."
*Addington v. Texas*, 441 U.S. 418, 431, 99 S. Ct. 1804, 1812 (1979). This freedom
extends to the "great latitude" given the states "under their police powers to legislate as to
the protection of the lives, limbs, health, comfort, and quiet of all persons." *Gonzalez v.
Oregon*, 546 U.S. 243, 270, 126 S. Ct. 904, 923 (2006) (quoting *Medtronic, Inc. v. Lohr*,
518 U.S. 470, 475 (1996)). In other words, just as the CSA is a valid exercise of the
federal government's authority, s*ee Gonzalez v. Raich*, 545 U.S. 1, 22, 26-33, 125 S. Ct.
2195, 2209, 2211-2215 (2005) (upholding the ability of the federal government to punish
medical marijuana use which is permitted under state law, by virtue of its authority under
the Commerce Clause of the United States Constitution), the MMA is a valid exercise of
Montana's police power under the dual state and federal structure embodied in the United
States Constitution. The MMA does not in any way prohibit the federal government
from enforcing the CSA against medical marijuana users like Nelson if it chooses to do
so; however, a state court may not, under these circumstances, use violation of the federal
law as a justification for revocation of a deferred sentence. Therefore, while the District
Court may require Nelson to obey all federal laws as a condition of his deferred
sentenced, it must allow an exception with respect to those federal laws which would
criminalize the use of medical marijuana in accordance the MMA. We accordingly
reverse the imposition of Condition No. 9, but only insofar as it relates to enforcing the
CSA at the expense of the MMA.

¶38 **Issue Three:** *Did the District Court violate the prohibition on cruel and unusual
punishment under the United States Constitution and Article II, Section 22 of the*

*Montana Constitution in imposing Condition No. 10 on Nelson's deferred sentence?*

¶39    Because of our holdings on Issues One and Two, we decline to reach this issue.

## CONCLUSION

¶40    We conclude the District Court exceeded its authority by requiring Nelson to comply with Condition No. 9, insofar as it subjected him to the possibility that his deferred sentence could be revoked based upon a violation of federal law.  While Nelson may be generally required to obey federal law, an exception must be made for lawful use of medical marijuana under the MMA.   Condition No. 10 also exceeds the District Court's sentencing authority, and insofar as it denies Nelson the right and privilege to use medical marijuana as contemplated by the MMA, it must be stricken as well.  Therefore, we reverse the imposition of these two conditions and remand for further proceedings consistent with this Opinion.


                                                                /S/ PATRICIA COTTER

We concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ BRIAN MORRIS


Justice Jim Rice, dissenting.

¶41    I respectfully dissent from the Court's conclusion that the District Court "exceeded its statutory authority" when imposing Condition 10.  Opinion, ¶ 33.  I agree

20

with the Court's initial determination to review Condition 10's legality pursuant to the MMA, but disagree with the Court's conclusion that the District Court "unlawfully denied Nelson the right and privilege to use a lawful medical treatment . . . ." Opinion, ¶ 27. In my view, the Court's conclusion is disconnected from the facts of this matter. Further, I believe the Court relies on California law inconsistently and reads additional requirements into the MMA.

¶42 First, the Court concludes that "an outright ban on the 'medical use' of marijuana as contemplated by the MMA exceeds the statutory authority of the District Court." Opinion, ¶ 33. Of course, Condition 10 is actually not "an outright ban" on the medical use of marijuana, but merely limits the form in which Nelson may use medical marijuana. Nothing in the MMA prohibits a court from limiting the form in which medical marijuana is consumed. *See* §§ 50-46-201 et seq., MCA.

¶43 Second, the Court relies upon the California case of *Tilehkooh* but disregards the same court's decision in *Bianco*. However, *Tilehkooh* is inapposite and *Bianco*'s analogous facts should guide the Court.

¶44 The issue in *Tilehkooh* was whether California's Compassionate Use Act (CUA), the equivalent to the MMA, was violated when Tilehkooh's probation was revoked based on his <u>lawful</u> use of marijuana. *Tilehkooh*, 7 Cal. Rptr. 3d 226. The California Court of Appeals concluded that revocation of Tilehkooh's probation was an impermissible penalty because marijuana had been lawfully prescribed under the CUA. *Tilehkooh*, 7 Cal. Rptr. 3d at 233. In reliance on *Tilehkooh*, the Court here states: "When a qualifying patient uses medical marijuana in accordance with the MMA, he is receiving lawful

21

medical treatment. In this context, medical marijuana is most properly viewed as a prescription drug." Opinion, ¶ 29. While there are situations where the Court's conclusion may well be correct, this case is not one of them.

¶45 Nelson was not a qualified MMA patient at the time he committed the crime. Accordingly, he was not using marijuana as a "prescription drug." To the contrary, Nelson illegally used marijuana and such illegal use is not protected by the MMA. Because Nelson's crime does not involve the "medical" use of marijuana, his case is entirely distinguishable from *Tilehkooh*, and *Bianco* is analogous.

¶46 Like Nelson, Bianco pled guilty to a felony charge of cultivating marijuana and in the interim, before sentencing, qualified for medical use of marijuana under the CUA. *Bianco*, 113 Cal. Rptr. 2d. at 394-95. At sentencing, the trial court imposed a probation condition prohibiting him from using or possessing marijuana. Bianco complained that the condition violated his right to use medically prescribed marijuana. The court rejected his argument and determined that the CUA "cannot be read so broadly as to abrogate the trial courts traditional discretion to impose appropriate conditions of probation." *Bianco*, 113 Cal. Rptr. 2d at 396. "In the absence of specific language prohibiting the imposition of the type of probation condition at issue here, this court must review the trial court's decision based on the legal principles that traditionally govern the imposition of probation conditions." *Bianco*, 113 Cal. Rptr. 2d at 396. This conclusion only makes sense: a defendant must be sentenced for the crime he has committed, under the law as it existed when he committed it.

22

¶47 Like Bianco, Nelson qualified under the MMA *after* he committed the crime and pled nolo contendere. At the time of his crime, Nelson was not authorized to use marijuana under the MMA. Accordingly, as in *Bianco*, the *illegal* use of marijuana is at issue and the MMA cannot fairly be read to *ex post facto* negate a condition otherwise properly imposed for that crime. Neither should it be read to interfere with a court's discretion to impose sentencing conditions for that crime.

¶48 However, the Court avoids the implications of *Bianco* by reasoning that *Tilehkooh* "implicitly overruled the holding of *Bianco*." Opinion, ¶ 28 n.1. However, a careful reading of *Tilehkooh* reveals that the *Tilehkooh* Court simply distinguished *Bianco* when considering the issue of whether Tilehkooh's probation was revocable on the basis that his medical use of marijuana was violative of federal law. *Tilehkooh*, 7 Cal. Rptr. 3d at 236. In support of its argument, the State of California had offered *Bianco*, but the *Tilehkooh* Court simply distinguished *Bianco* on the ground that the *Bianco* Court "did not consider the fact that what was being enforced was state and not federal law." In my view, this statement did not "implicitly overrule" *Bianco*, but merely explained why *Bianco* was inapposite to the State's argument on the federal issue. Accordingly, the Court should consider the importance of *Bianco* when relying upon California law.

¶49 Moreover, I believe the Court reads into the MMA a new restriction upon the imposition of sentencing conditions for persons convicted of illegally using marijuana. Our duty when interpreting statutes is simply "to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. The MMA states that "[a] qualifying patient or

23

caregiver who possesses a registry identification card issued pursuant to § 50-16-103 may not be arrested, prosecuted, or penalized in any manner or be denied any right or privilege . . . for the medical use of marijuana . . . ." Section 50-46-201, MCA. Pursuant to the plain language of § 50-46-201, MCA, the MMA should not render Condition 10 illegal because Nelson was not "arrested, prosecuted, or penalized in any manner . . . for the <u>medical use of marijuana</u> . . . ." (Emphasis added.) Simply put, Nelson's sentence penalizes him, not for the *medical* use of marijuana, but rather, relating back to his crime, penalizes him for the *illegal* use of marijuana prior to his qualification as a MMA patient. Then, given Nelson's post-crime MMA qualification, the District Court found the "perfect solution": it prohibited Nelson's use of plant form marijuana because of his past crime, but permitted the pill form to satisfy his future medical need. Unfortunately, the Court's application of the MMA negates a condition properly imposed for the crime, and which is not invalidated under the plain language of the MMA.

¶50     Because I would conclude that Condition 10 is facially legal, I would proceed to review the reasonableness of Condition 10 for an abuse of discretion by determining whether there is a sufficient nexus between the condition and the offense or the offender. *See Ashby*, ¶ 7. Here, Condition 10 is clearly related to the offense and the offender. Condition 10 is reasonable considering that Nelson has a ten-year history of illegal marijuana use—use that pre-dated his MMA qualification. Indeed, absent its conclusion that Condition 10 violates the MMA, the Court notes that Nelson's past illegal drug use "would presumptively satisfy the nexus requirement for sentencing conditions." Opinion, ¶ 31. Moreover, Nelson smoked marijuana in his home where children are present.

Limiting his use of marijuana to pill form is reasonable considering the presence of children in the home and the near impossibility of monitoring a restriction on the place of use—a limit likewise suggested by the Court. Opinion, ¶ 33.

¶51 For these reasons, I would conclude that Condition 10 is a permissible sentencing condition that is both legally valid and reasonable.

¶52 I dissent.


/S/ JIM RICE