J-A07009-21

2021 PA Super 159

| | | |
|---|---|---|
| PAMELA PALMITER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COMMONWEALTH HEALTH SYSTEMS, | : | |
| INC. D/B/A COMMONWEALTH | : | |
| HEALTH and PHYSICIANS HEALTH | : | No. 498 MDA 2020 |
| ALLIANCE D/B/A COMMONWEALTH | : | |
| HEALTH and MOSES TAYLOR | : | |
| HOSPITAL D/B/A COMMONWEALTH | : | |
| HEALTH | : | |

Appellants

Appeal from the Order Dated December 31, 2019
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s):  19-CV-1315

BEFORE:   BOWES, J., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY BOWES, J.:                    **FILED:  AUGUST 10, 2021**

Commonwealth Health Systems, Inc. d/b/a Commonwealth Health and

Physicians Health Alliance d/b/a Commonwealth Health and Moses Taylor

Hospital d/b/a Commonwealth Health (collectively "Hospital")[1] appeal from

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The petition for permission to appeal was filed by "Scranton Quincy Clinic Company, LLC d/b/a Physicians Health Alliance and Scranton Quincy Hospital Company, LLC d/b/a Moses Taylor Hospital."  According to preliminary objections filed by the Commonwealth Health defendants below, and noted by the trial court in its opinion, the Scranton Quincy entities are successors to
_(Footnote Continued Next Page)_

the December 31, 2019 order overruling in part its preliminary objections in the nature of a demurrer to Pamela Palmiter's claims under the Medical Marijuana Act ("MMA"), 35 P.S. §§ 10231.101-10231.2110.[2]  We affirm.

Ms. Palmiter pled the following.  In 2017, she was employed as a medical assistant by Medical Associates of NEPA.  In December 2018, she "became a patient able to use medical marijuana through[out] the Commonwealth of Pennsylvania" due to her "chronic pain, chronic migraines, and persistent fatigue."  Third Amended Complaint, 5/30/19, at ¶¶ 10-11.  During her tenure there, Medical Associates of NEPA was acquired by the Hospital herein, but she was assured by her superiors while that process was pending that she would keep her job and seniority.  *Id*. at ¶ 23.  On January 11, 2019, Ms. Palmiter "applied for the position of Certified Medical Assistant" with the Hospital and was notified four days later that she was "a new employee of [the Hospital]."  *Id*. at ¶¶ 14-15.

When Ms. Palmiter appeared for a scheduled employment-related drug test on January 22, 2019, she informed the laboratory that she was prescribed medical marijuana.  *Id*. at ¶¶ 16-17.  She also faxed to the laboratory a copy of the medical marijuana certification.  *Id*. at ¶18.  On January 29, 2019, Ms.

---

the Commonwealth Health entities.   However,  the  record  contains  no indication that there was a formal substitution of parties or amendment of caption below.  Under the circumstances, the caption in this Court should mirror the caption in the trial court, and we have amended the caption herein to achieve that consistency.

[2] Jurisdiction of the within interlocutory appeal was conferred by permission pursuant to 42 Pa.C.S. § 702(b) and Pa.R.A.P. 1311.

Palmiter received a telephone call from Jessica Vaccaro of the Hospital advising her that she could not work for the Hospital based upon her drug test. *Id*. at ¶19.

On February 21, 2019, Ms. Palmiter commenced this action against the Hospital. In her third amended complaint, Ms. Palmiter advanced five causes of action: violation of the MMA; breach of contract; invasion of privacy; wrongful discharge; and intrusion on seclusion. The Hospital filed preliminary objections in the nature of a demurrer alleging that Ms. Palmiter's complaint failed to state a claim under any of these theories. The trial court sustained the demurrer as to Count II (breach of contract), Count III (invasion of privacy), and Count V (intrusion on seclusion); but overruled the preliminary objections to Count I asserting a private cause of action under the MMA, and Count IV, a wrongful discharge claim based on a violation of public policy.[3] *See* Order, 11/22/19. Thereafter, the Hospital asked the trial court to certify that its interlocutory order involved a controlling question of law as to which there was a substantial ground for difference of opinion, and that an immediate appeal would materially advance the ultimate disposition of the litigation. The trial court agreed and amended its earlier order to include the requested 42 Pa.C.S. § 702(b) language. Order, 12/31/19. The Hospital filed a petition for permission to appeal in this Court, which was granted on March

_____

[3] Ms. Palmiter did not file a cross-appeal from the order dismissing Counts II, III, and V of her third amended complaint.

20, 2020.  The Hospital and the trial court thereafter complied with Pa.R.A.P. 1925.

The Hospital presents two issues for our review:

1. Whether Appellee's claim under the Medical Marijuana Act ("the MMA" or "the Act"), 35 P.S. §§ 10231.101 to .2110, as set forth in Count I of the Third Amended Complaint, is legally insufficient because the Act does not provide for a private right of action?

2.  Whether Appellee's attempt to state a claim for wrongful discharge in violation of public policy, as set forth in Count IV of the Third Amended Complaint, is legally insufficient?

Appellant's brief at 3-4.

In ruling on preliminary objections in the nature of a demurrer, the trial court was required to "accept as true all well-pleaded allegations of material fact and all reasonable inferences deducible from those facts" and resolve all doubt "in favor of the non-moving party."  **Commonwealth v. UPMC**, 208 A.3d 898, 904 (Pa. 2019).  The question presented was "whether, on the facts averred, the law says with certainty that no recovery is possible." **Id.** at 24 n.9 (citing **Tucker v. Phila. Daily News**, 848 A.2d 113 (Pa. 2004)).  When any doubt exists as to whether the demurrer should be sustained, this doubt should be resolved in favor of overruling it.  **Bilt-Rite Contractors, Inc. v. The Architectural Studio**, 866 A.2d 270, 274 (Pa. 2005).

On appeal from the trial court's order overruling preliminary objections in the nature of demurrer, our standard of review is *de novo* and our scope of review is plenary.  **Weaver v. Harpster**, 975 A.2d 555, 559-60 (Pa. 2009).

Hence, we apply the same standard as the trial court in evaluating the legal sufficiency of the complaint, and examine whether, on the facts averred, the law says with certainty that no recovery is possible. *UPMC*, *supra* at 909.

The Hospital contends that there is no private right of action under § 10231.2103(b)(1) of the MMA, which provides that "[n]o employer may discharge, threaten, refuse to hire or otherwise discriminate or retaliate against an employee regarding an employee's compensation, terms, conditions, location or privileges solely on the basis of such employee's status as an individual who is certified to use medical marijuana." 35 P.S. § 10231.2103(b)(1). The Hospital asserts first that is "inarguable that there is no explicit right of action by which an employee can directly enforce this prohibition." Appellant's brief at 10. Furthermore, it argues that a private right of action is seldom found unless it is either provided in the statute or is clearly implied by the statutory language. *Id*. at 11 (citing *Estate of Witthoeft v. Kiskaddon*, 733 A.2d 623, 626 (Pa. 1997)).[4]

The Hospital directs our attention to the three-part test for determining whether an implied private right of action exists, which was derived from the United States Supreme Court's decision in *Cort v Ash*, 422 U.S. 66, 78

---

[4] A "private right of action" pertains to "[a]n individual's right to sue in a personal capacity to enforce a legal claim." *MERSCORP, Inc. v. Del. Cty*., 207 A.3d 855, 884 (Pa. 2019) (Dissent by Donohue, J.) (quoting Black's Law Dictionary 1520 (10th ed. 2014).

(1975), and adopted in Pennsylvania in **Witthoeft**. Implied authority for a private cause of action exists when (1) the plaintiff is part of a class for whose 'especial' benefit the statute was enacted; (2) there is an indication of legislative intent to create or deny a remedy; and (3) an implied cause of action is consistent with the underlying purpose of the legislative scheme. **See MERSCORP, Inc. v. Del. Cty.**, 207 A.3d 855, 870 n.14 (Pa. 2019) (citing **Witthoeft**, **supra** at 626).

The Hospital does not dispute that the first and third prongs of the test are met here.[5] It focuses on the second prong: an indication of legislative intent to create or deny a remedy. The Hospital asserts first that there was no legislative intent to create a private remedy as evidenced by the fact that the statute authorizes the Department of Health to impose civil penalties for MMA violations and pursue "any other remedy available to the Department." 35 P.S. § 10231.1308(b). According to the Hospital, the Department of Health has the exclusive authority to enforce the MMA's provisions. The Hospital cites the Third Circuit Court of Appeals decision in **Wisniewski v. Rodale, Inc.**, 510 F.3d 294, 305 (3d Cir. 2007), for the proposition that "[a]gency

---

[5] Specifically, the Hospital does not contest that, as a certified medical marijuana user, Ms. Palmiter is a member of the class for whose special benefit the MMA was enacted, or that implying a private right of action is consistent with the stated purposes of the MMA and effectuates the legislative intent evident in § 2103(b)(1) by preventing employers from terminating lawful medical marijuana users.

- 6 -

enforcement creates a strong presumption against implied private rights of action that must be overcome."

The Hospital contends further that Ms. Palmiter cannot demonstrate any indication of legislative intent to create a remedy because the statute does not contain rights-creating language focusing on the individual protected. It directs our attention to **Wisniewski**, wherein the issue was whether the Postal Reorganization Act ("PRA") permitted an implied private right of action. In that case, the Third Circuit noted that the PRA contained three sections, two of which focused on the person regulated and required that certain actions be taken, and one which addressed the right of the recipient to treat unsolicited mail as a gift. The court found that the first two sections did not necessarily create "personal rights" for recipients. However, the language providing that merchandise mailed in violation of the applicable section of the statute could be treated as a gift, and retained or disposed of by the recipient without any obligation to the sender, was rights-creating because it referenced a right and focused on the individual protected. **Id**. at 302. Nevertheless, since the statute provided for Federal Trade Commission ("FTC") enforcement, the court found that it created a presumption that FTC enforcement was exclusive in the absence of other enforcement provisions.

The court of appeals concluded that although the statute created a right in recipients of unsolicited merchandise to keep the merchandise, "it says nothing about the consequences if a mailer violates the statute and thereby

induces a recipient to disregard this right." *Id*. at 306. The court found no intent to provide a private right of action for a violation of that provision. The Hospital concludes that "the MMA, like the PRA, focuses explicitly and exclusively, on prohibiting actions of employers, rather than creating rights or entitlements for employees." Appellant's brief at 18. According to the Hospital, that alone should end the inquiry.

Nonetheless, the Hospital also maintains that Ms. Palmiter's claim under the MMA fails because the statute contains no remedy or time frame for action. *See* Appellant's brief at 19 (citing the dissent in *MERSCORP*, *supra* at 870 n.14, for the proposition that such a vacuum was indicative of legislative intent not to provide a private right of action or a remedy). The Hospital also attempts to distinguish cases from other jurisdictions cited by Ms. Palmiter in support of her claim that the MMA provides an implied private right of action. Finally, the Hospital reminds us that "the violation of a statute and the fact that some person suffered harm does not automatically give rise to a private cause of action in favor of the injured person." *Witthoeft*, *supra* at 627.

Ms. Palmiter largely adopts the thorough and well-reasoned conclusions of the Honorable Terrence R. Nealon, who found that while the statute authorized the Department of Health to regulate persons and entities who opted to participate in Pennsylvania's "Medical Marijuana Program," the absence of an agency enforcement provision in § 2103(b)(1) suggested that the legislature did not intend to bar a private right of action under that section.

The trial court reasoned further that the provision would be "rendered meaningless if an aggrieved employee could not pursue a private cause of action and seek to recover compensatory damages from an employer that violates Section 2103(b)(1)." Trial Court Opinion, 11/22/19, at 2. The court concluded that "[r]ecognition of an implied right of action under Section 2103(b)(1) is consistent with the MMA's stated purpose of providing safe and effective access to medical marijuana for eligible patients, while simultaneously protecting them from adverse employment treatment in furtherance of the legislative intent in Section 2103(b)(1)." *Id*. at 2-3.

In addition, Ms. Palmiter points out that courts in other jurisdictions have found implied private rights of action for employees who are discriminated against by their employers under their states' respective medical marijuana statutes. Notably, after the trial court decision herein, the federal district court for the Eastern District of Pennsylvania applied the three-part test derived from *Cort*, *supra*, and concluded in *Hudnell v. Thomas Jefferson University Hosps., Inc.*, C.A. No. 20-01621, 2020 U.S. Dist. LEXIS 176198 (E.D. Pa. September 25, 2020), that Pennsylvania would find an implied private cause of action under its MMA.

The issue presented herein is one of first impression for the appellate courts of this Commonwealth. To determine whether an explicit or implied private right of action exists under a particular statute, we must examine the language of the statute and analyze the legislative intent in enacting the

statute. *See Alfred M. Lutheran Distributors, Inc. v. A.P. Wilersbacher, Inc., et al.*, 650 A.2d 83, 86 (Pa.Super. 1994). Absent an explicit statutory right to a private cause of action, we look to the intent of the General Assembly to determine whether there is an implied right of action. In determining the intent of the legislature, we must read the statutory language in context, and "every portion of statutory language is to be read 'together and in conjunction' with the remaining statutory language, 'and construed with reference to the entire statute' as a whole." *Com. v. Office of Open Records*, 103 A.3d 1276, 1285 (Pa. 2014) (quoting *Board of Revision of Taxes, City of Philadelphia v. City of Philadelphia*, 4 A.3d 610, 622 (Pa. 2010)). As the Supreme Court in *Gass v. 52nd Judicial Dist.*, 232 A.3d 706, n.6 (Pa. 2020) characterized the MMA as remedial in nature, it should be accorded a liberal construction. *See* 1 Pa.C.S. § 1928(c).

Although the General Assembly did not expressly create a private right of action on behalf of an employee whose employer discriminates against her for medical marijuana use, it proclaimed a public policy prohibiting such discrimination. *See* 35 P.S. § 10231.2103. Moreover, we have recognized implied rights of action where the three-part *Cort* test is satisfied. *See Schappell v. Motorists Mut. Ins. Co.*, 934 A.2d 1184 (Pa. 2007) (finding health providers had an implied cause of action for nonpayment of interest under the Motor Vehicle Financial Responsibility Law ("MVFRL") as they were the group for which the statutory interest benefit was intended, the section

contemplated that a remedy for nonpayment of specified interest would be available, and a private cause of action was consistent with the underlying purposes of the MVFRL).

Moreover, our view of the MMA does not support the Hospital's claim that the statute confers exclusive jurisdiction over the enforcement of § 2103 to the Department of Health. *Compare Cty. of Butler v. CenturyLink Communs., LLC*, 207 A.3d 838 (Pa. 2019) (finding no private right of action to enforce statute where legislature "provided sufficient indicia evincing its intention to centralize enforcement authority in the relevant state agency"). As the trial court aptly noted, "Section 2103 of the MMA does not grant the Department [of Health] or any other agency the administrative authority to enforce the antidiscrimination mandate in 35 P.S. § 10231.2103(b)(1)." Trial Court Opinion, 11/22/19, at 23. We would also point out that § 2103(b) authorizes employers, not the Department of Health, "to discipline an employee for being under the influence of medical marijuana in the workplace or for working while under the influence of medical marijuana when the employee's conduct falls below the standard of care normally accepted for that position." 35 P.S. § 10231.2103(b)(2).

Admittedly, the MMA charges the Department of Health with the implementation and administration of the MMA program by issuing permits to medical marijuana organizations and registering practitioners, as well as "regulatory and enforcement authority over the growing, processing, sale and

- 11 -

use of medical marijuana in this Commonwealth." 35 P.S. § 10231.301(a)(3). It also authorizes the Department of Health to impose civil penalties for MMA violations and pursue "any other remedy available to the Department." 35 P.S. § 10231.1308(b). However, as the trial court noted, the Department of Health's regulations at 28 Pa. Code § 1141.47(a)(1)-(6) only address the agency's power to regulate medical marijuana organizations. **See** Trial Court Opinion, 11/22/19, at 24-25 (summarizing the regulations as empowering the Department to suspend or revoke a medical marijuana organization's permit, to order operations to cease and desist, or to "[o]rder the restitution of funds or property unlawfully obtained or retained by such an organization, issue warnings, and develop plans of correction"). The court added that "not a single regulation purports to bar employers from discharging employees based on their status as certified medical marijuana user." **Id**. at 25. **See Solomon v. United States Healthcare Sys. of Pa.**, 797 A.2d 346, 353 (Pa.Super. 2002) (finding no private cause of action under the Health Care Act where the regulations provided an administrative procedure for health care providers to file a complaint with the Insurance Department). **See also Hudnell**, **supra** at *13 (holding that when read in context, the power and authority conferred upon the Department of Health under § 1308(b) "more reasonably applies only to parties who are participating in the Medical Marijuana Program established by the Act (*i.e.*, operators of a medical marijuana organization)).

Our finding that the Department of Health does not have exclusive enforcement authority is further buttressed by the following facts. Prices are to be monitored by both the Department of Health and the Department of Revenue. *See* 35 P.S. § 10231.705. Law enforcement is to be notified of any suspected criminal violation of the Act, clearly undermining any notion that all enforcement authority rests in the Department of Health. *See* 35 P.S. §§ 10231.1301-10231.1307. The Department of Education is directed to promulgate regulations governing the possession and use of medical marijuana by students and school employees on school grounds. *See* 35 P.S. § 10231.2104. The Department of Human Services is similarly charged with promulgating regulations governing children and employees in day-care centers and youth development centers. *See* 35 P.S. § 10231.2105. The State Ethics Commission is to determine the eligibility of certain public officials and their family members to own a financial interest in or be employed by a medical marijuana organization. *See* 35 P.S. § 10231.2101.1(d). In light of the foregoing, we reject the Hospital's contention that the Department of Health is the exclusive enforcer of the provisions of the MMA and that § 1308(b) was intended to limit the remedies available to employee patients or employers under § 2103.

Nor do we believe the MMA is focused solely on the provider rather than the patient. The General Assembly's declared policy in enacting the legislation was to "mitigate suffering in some patients and enhance quality of life" by

providing a program whereby patients could access medical marijuana safely. 35 P.S. § 10231.102. To that end, several chapters of the MMA are dedicated to the regulation of medical marijuana organizations and their operations. However, 35 P.S. § 10231.2103(a), titled "protections for patients and caregivers," provides generally that patients, caregivers, practitioners, and other enumerated persons shall not be "subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including civil penalty or disciplinary action by a Commonwealth licensing board or commission, solely for lawful use of medical marijuana." *Id*. *See also Gass*, *supra* at 708 (characterizing § 10231.2103(a) as an immunity provision protecting patients from government sanctions). Subsection (b)(1) specifically prohibits any employer from discharging, threatening, or refusing to hire or discriminating or retaliating against an employee "solely on the basis of such employee's status as an individual who is certified to use medical marijuana." *Id*. at § 2103(b)(1). We find the foregoing to be the type of rights-creating language that focuses on the individuals protected.

Furthermore, we find additional indications that the legislature intended to create a private remedy for violations of § 2103, which focuses on protecting employee-patients certified to use medical marijuana, such as Ms. Palmiter, from employers who would penalize them for availing themselves of the benefits conferred by the statute. That same section of the statute also explicitly sets forth the rights of employers, *i.e.*, that an employer is not

required to provide an accommodation for certified users and may discipline employees who are under the influence of medical marijuana in the workplace. *See* § 2103(b)(2). Thus, in the employment context, § 2103(b) of the MMA not only delineates the rights afforded employees who are certified users, but also sets forth the rights of employers to discipline employees who are in violation of the terms of certified use. As the trial court correctly noted, "neither the MMA nor the regulations promulgated by the Department [of Health] provide an independent enforcement mechanism against employers who violate Section 2103(b)(1)." Trial Court Opinion, 11/22/19, at 32.

Nor is the absence of a specific remedy or time frame for action conclusive of a lack of legislative intent to create a private right of action. Even where the statute expressly creates a private right of action, the legislature does not always state the specific remedy or the time in which to pursue it. *See*, *e.g*., *Fazio v. Guardian Life Ins. Co. of Am.*, 62 A.3d 396 (Pa.Super. 2012) (acknowledging express private cause of action for violation of the Unfair Trade Practice and Consumer Protection Law ("UTPCPL"), but recognizing that the remedies therein were not exclusive, and in the absence of a statute of limitations provision, applying the six-year catch-all provision).

The trial court comprehensively surveyed the medical marijuana laws in other jurisdictions, with special attention paid to statutes providing that employers could not discriminate against employees who were certified users of medical marijuana, but which were silent as to a private remedy. *See e.g.*,

- 15 -

*Bulerin v. City of Bridgeport*, 2019 Conn. Super. LEXIS 517 *, 2019 WL 1766067 (Conn. Super. 2019); *Callaghan v. Darlington Fabrics Corp.*, 2017 R.I. Super. LEXIS 88 *, 2017 WL 2321181, at *2 (R.I. Super. 2017); *Noffsinger v. SSC Niantic Operating Co.*, 273 F.Supp. 3d 326 (D. Conn. 2017); *Chance v. Kraft Heinz Foods Company*, 2018 Del. Super. LEXIS 1773 *, 2018 WL 6655670, at *3 (Del. Super. 2018); *Whitmire v. Wal-Mart Stores, Inc.*, 359 F.Supp.3d 761 (D. Ariz. 2019) (finding an implied right of action where statute contained a civil penalties provision). *See also Hudnell*, *supra* at *15 (predicting that the Pennsylvania Supreme Court would likely find the General Assembly intended to create an implied private cause of action for a violation of § 2103(b) of the MMA).

Where, as here, the statute is not explicit, we may ascertain the intent of the General Assembly by looking at the mischief to be remedied, the object to be obtained, and the consequences of a particular interpretation. *See* 1 Pa.C.S.§ 1921(c) (The Statutory Construction Act). "[T]he General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." *Id*. at § 1922(1). Finally, "[t]he provision in any statute for a penalty or forfeiture for its violation shall not be construed to deprive an injured person of the right to recover from the offender damages sustained by reason of the violation of such statute." *Id*. at § 1929. In applying the foregoing principles of statutory construction, and in the absence of specific evidence of legislative intent, we find that the demurrer was properly

- 16 -

overruled to Ms. Palmiter's private action under the MMA for termination by the Hospital due solely to her status as a certified user of medical marijuana.

With regard to the Hospital's claim that the trial court erred in overruling its demurrer to Ms. Palmiter's wrongful discharge claim, the following principles inform our review.[6] Pennsylvania is an at-will employment state. *Greco v. Myers Coach Lines, Inc.*, 199 A.3d 426, 435 (Pa.Super. 2018). Generally, a common law cause of action will not lie against an employer for termination of such a relationship. *See McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa. 2000). It is only in limited circumstances, such as where "termination implicates a clear mandate of public policy," that an at-will employee can pursue a cause of action. *Gross v. Nova Chems. Servs.*, 161 A.3d 257, 262 (Pa.Super. 2017) (citation omitted). *See e.g.*, *Shick v. Shirey*, 716 A.2d 1231, 1233 (Pa. 1998) (holding that termination of an at-will employee for filing a workers' compensation claim violates public policy of the Workers' Compensation Act) and *Rothrock v. Rothrock Motor Sales, Inc.*, 883 A.2d 511, 517(Pa. 2005) (holding that termination of a supervisory employee for refusing to terminate subordinate employee who filed worker's compensation claim violates public

---

[6] The Hospital identifies two questions on appeal, but contrary to our appellate rules, divides the argument portion of its brief into six sections that do not align with those questions. *See* Pa.R.A.P. 2119(a) (providing "[t]he argument shall be divided into as any parts as there are questions to be argued").

policy).  Public policy can be found in our judicial precedent, our Constitution, and the legislature's statutes.  **McLaughlin, supra** at 288.

The trial court relied upon **Roman v. McGuire Memorial**, 127 A.3d 26 (Pa.Super. 2015), and we find that decision instructive herein.  Roman, a health care worker, was allegedly discharged in retaliation for refusing to accept overtime work.  She commenced an action against her former employer for wrongful discharge, alleging that her termination "offend[ed] the public policy of the Commonwealth of Pennsylvania as embodied in The Prohibition of Excessive Overtime in Health Care Act ("Act 102"), 43 P.S. §§ 932.1-932.6."  **Id**. at 27.  The implicated section of Act 102 provided that a health care facility could not require an employee "to work in excess of an agreed to, predetermined and regularly scheduled daily work shift" and that an employee's refusal to accept work in excess of the limitations shall not be grounds for discrimination, dismissal, discharge or any other employment decision adverse to the employee."  43 P.S. § 932.3(a)(1), (b).  We held that such language established a public policy precluding a health care facility from requiring an employee to work in excess of a daily work shift.  Although Section 6 of the statute authorized the Department of Labor and Industry to impose "an administrative fine on a health care facility or employer that violates this act" and to "order a health care facility to take an action which the department deems necessary to correct a violation," we rejected the employer's claim that employee's sole remedy was administrative as it was

limited to fines and corrective action orders against the employer and did not provide for backpay or reinstatement.

The Hospital argues that **Roman** is inapposite as the Department of Health's enforcement authority under the MMA is not as limited as the remedies in Act 102. Furthermore, it argues that since the MMA provides for remedies to be enforced exclusively by the Department of Health, no wrongful discharge claim can be maintained. It cites **Macken v. Lord Corp.**, 585 A.2d 1106, 1108 (Pa.Super. 1991), for the proposition that it is only in the absence of a statutory remedy and when a well-recognized public policy is at stake, that such a cause of action will be permitted. **See** Appellant's brief at 34.

We have already determined *supra* that the MMA does not provide statutory remedies for aggrieved employees through its administrative enforcement provisions. Further, § 2103(b)(1) evidences a clear public policy against termination of employment and other types of discrimination based on certified marijuana use off the employment premises. Thus, **Macken** does not preclude a private cause of action herein.

Finally, the Hospital cites **Hershberger v. Jersey Shore Steel Co.**, 575 A.2d 944 (Pa.Super. 1990), in support of its claim that "[t]he Pennsylvania Supreme Court has never recognized a claim for wrongful termination in violation of public policy based on the results of a drug test." Appellant's brief at 38. In that case, the employee was terminated based on an inaccurate drug test. **Hershberger** is inapposite. The enactment of the

MMA in 2016 reflects a public policy designed to protect certified users of medical marijuana from employment discrimination and termination. As the Supreme Court of Pennsylvania recognized in **Gass**, **supra** at 711 (quoting **State v. Nelson**, 195 P.3d 826, 833 (Mont. 2008)), "[w]hen a qualifying patient uses medical marijuana in accordance with the MMA, he is receiving lawful medical treatment. In this context, medical marijuana is most properly viewed as a prescription drug."

For the foregoing reasons, we see no impediment to Ms. Palmiter maintaining a private action under the MMA or a wrongful discharge action on the facts pled and the applicable law. Thus, we affirm.

Order affirmed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  08/10/2021