No. 04-587

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 20

LEE WISER; R. BRENT KANDARIAN; CLIFF CHRISTENOT;
DAVE COMER; DOUGLAS CRUMB; EVERETT VANDENEEDEN;
ALLEN CASTEEL; FRANK BRISENDINE; ROB CARNAHAN;
KEN MACPEHRSON; CHAS CONLAN; AARON HANSEMANN;
GRANT OLSON; JOHN MATESKON; MARK RITTENHOUSE;
and JOHN DOE PLAINTIFFS 1-24,

   Plaintiffs and Appellants,

  v.

STATE OF MOTANA; DEPARTMENT OF COMMERCE;
DEPARTMENT OF LABOR AND INDUSTRY; and
BOARD OF DENTISTRY,

   Defendants and Respondents.

APPEAL FROM:  The District Court of the First Judicial District,
      In and For the County of Lewis and Clark, Cause No. BDV 2001-647,
      Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

   For Appellants:

      Jonathan R. Motl, David K.W. Wilson, Jr., and Brenda Lindlief-Hall,
      Reynolds, Motl & Sherwood, P.L.L.P., Helena, Montana

   For Respondents:

      Honorable Mike McGrath, Attorney General; Chris D. Tweeten,
      Assistant Attorney General, Helena, Montana

      John Atkins and James Santoro, Special Assistant Attorneys General,
      Department of Labor and Industry, Helena, Montana

   For Amicus Curiae:

      Holly Franz, Franz & Driscoll, Helena, Montana (Montana Senior
      Citizens Association)

          Submitted on Briefs: June 21, 2005
               Decided: January 31,
2006

Filed:

      _____
             Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Lee Wiser and the other named plaintiffs (Appellants) appeal from the order of the First Judicial District Court, Lewis and Clark County, granting summary judgment in favor of Respondents State of Montana, Department of Commerce, Department of Labor and Industry, and Board of Dentistry (Respondents) on all of Appellants' claims. We affirm.

¶2     In determining whether the District Court erred in granting summary judgment to Respondents, we undertake consideration of the following issues:

¶3     (1) Does the Board of Dentistry's Partial Denture Rule impermissibly infringe upon the state constitutional privacy right of denture patients?

¶4     (2) Does the Board of Dentistry's Partial Denture Rule impermissibly infringe upon denturists' state constitutional right to pursue employment?

¶5     (3) Do Board of Dentistry policies, membership, and restrictions on denturity violate denturists' federal due process and § 1983 rights?

¶6     (4) Do Board of Dentistry restrictions on denturity constitute unlawful restraint on trade?

BACKGROUND

¶7     The long struggle between denturists and dentists is well documented in the annals of the legislative, executive, and judicial branches of Montana government. This Court has adjudicated disputes between these two professions no less than three times. Raging since the mid-1980s, the battle at its core is the regulation of the denturity profession by the State

Board of Dentistry, which, in the eyes of denturists, is dominated by dentists who actively oppose denturity.

¶8    Authorized for licensure by the Montana Legislature in 1984, denturists were originally regulated by a Board of Denturity created by the Freedom of Choice in Denture Services Act of 1984. *See* §§ 37-29-101 and -201, MCA (1985). However, in 1987, the Legislature dissolved the Board of Denturity, placing denturists under the licensing and regulatory authority of the Board of Dentistry (BOD). *See* compiler's comments, § 37-29-102, MCA (1987). Regulatory conflicts between denturists and dentists ensued thereafter.

¶9    Between 1987 and 1991, the BOD restricted denturists by (a) requiring dentist referrals, (b) restricting when denturists can insert dentures, (c) requiring three-part certificate of work forms from dentists before certain denturity procedures could be performed, and (d) by bringing suit against denturists engaging in bite-examination work with patients. Denturists, fearing the systematic erosion of their profession and livelihoods, challenged all of these actions, and at times prevailed. *See Board of Dentistry v. Kandarian* (1991), 248 Mont. 444, 813 P.2d 409. At times the BOD prevailed. *See Christenot v. State* (1995), 272 Mont. 396, 901 P.2d 545.

¶10    The roots of the present controversy run to 1985, when the Legislature passed § 37-29-403, MCA, requiring denturists to refer partial denture patients to dentists "as needed." Not surprising, the "as needed" language was disputed almost immediately. Dentists claimed that all partial denture patients had to be referred to a dentist before denturists could proceed with treatment, while denturists claimed referrals were in the discretion of the denturist.

3

Unfortunately for the denturists, the BOD agreed with the dentists, and promulgated Rule 8.17.800, ARM (now Rule 24.138.416, ARM), interpreting § 37-29-403, MCA, as requiring that denturists refer all partial denture patients to dentists before providing partial denture services (the Partial Denture Rule). Litigation ensued.

¶11 In 1995, the question of whether Rule 8.17.800, ARM, was a valid interpretation of § 37-29-403, MCA, was presented to this Court. We held that the rule was not inconsistent with § 37-29-403, MCA, and upheld the BOD's restriction on denturity. *See Christenot*, 272 Mont. 396, 901 P.2d 545. However, this Court specifically declined to rule on the constitutionality of the rule. *See Christenot*, 272 Mont. at 402, 901 P.2d at 549. Today, that question, among others, has returned.

¶12 Appellant denturists and denture patients challenge the constitutionality of both the Partial Denture Rule and the statutory framework which places the profession of denturity under the regulatory thumb of the BOD. The District Court rejected both challenges, upholding both the constitutionality of the Partial Denture Rule, and the placement of denturity under the control of the Board of Dentistry.

STANDARD OF REVIEW

¶13 This case is before us on a grant of summary judgment in favor of the Respondents. As stated in Rule 56(c), M.R.Civ.P., summary judgment is only proper when no genuine issues of material fact exist such that the moving party is entitled to judgment as a matter of law. "The initial burden is on the moving party to demonstrate 'a complete absence of any genuine issue as to all facts considered material in light of the substantive principles that

4

entitle the moving party to judgment as a matter of law and all reasonable inferences are to be drawn in favor of the party opposing summary judgment.'" *Schmidt v. Washington Contractors Group, Inc.*, 1998 MT 194, ¶ 7, 290 Mont. 276, ¶ 7, 964 P.2d 34, ¶ 7; *citing Kolar v. Bergo* (1996), 280 Mont. 262, 266, 929 P.2d 867, 869. If the moving party meets this burden, "the burden shifts to the non-moving party to establish otherwise." *Schmidt*, ¶ 7. On appeal, we review grants of summary judgment *de novo*, determining whether the grant of summary judgment was correct. *Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474, 803 P.2d 601, 603. Finally, we review a District Court's conclusions of law *de novo*, determining their correctness. *Steer, Inc.*, 245 Mont. at 474-75, 803 P.2d at 603.

DISCUSSION

***Issue 1: Does the Board of Dentistry's Partial Denture Rule impermissibly infringe upon the state constitutional privacy right of denture patients?***

¶14 Appellants assert that BOD restrictions on denturity, specifically the Partial Denture Rule set forth in Rule 24.138.416, ARM, requiring dentist referrals before denturists may perform partial denture work, infringe upon the right of patients to seek the medical professional of their choice. Citing *Armstrong v. State*, 1999 MT 261, 296 Mont. 361, 989 P.2d 364, Appellants argue that the restrictions violate their right to privacy guaranteed in Article II, Section 10 of the Montana Constitution.

¶15 The right to privacy is a fundamental right guaranteed by the Montana Constitution. *Armstrong*, ¶¶ 29-34. However, it does not necessarily follow from the existence of the right to privacy that every restriction on medical care impermissibly infringes that right. *Armstrong* described the right to health care as a

5

> fundamental privacy right to obtain a particular lawful medical procedure from a health care provider that has been determined by the medical community to be competent to provide that service and who has been licensed to do so.

*Armstrong*, ¶ 62.

¶16 Thus, while recognizing that the right to privacy was implicated in health care choices, *Armstrong* nonetheless specifically defined the right as guaranteeing access to a chosen health care provider who has been determined "competent" by the medical community and "licensed" to perform the procedure desired. *Armstrong*, ¶ 62. *Armstrong* did not hold that there is a right to see a health care provider who is not licensed to provide the services desired.

¶17 Appellants rely heavily on *Andrews v. Ballard* (S.D. Tex. 1980), 498 F.Supp. 1038, a case which held that patients have a broad right to health care which includes the fundamental right to seek treatment from acupuncturists who have not been licensed or approved by the relevant licensing or medical board. *Andrews*, 498 F.Supp. at 1057. The court in *Andrews* struck down the statute at issue there, which limited the practice of acupuncture to licensed doctors, because it did not serve a "compelling" state interest. *Andrews*, 498 F.Supp. at 1055-57. Appellants correctly note that we cited *Andrews* favorably in *Armstrong*. *Armstrong*, ¶¶ 54-56, n.8. However, we cited *Andrews* for the general proposition that individuals have the right to obtain and reject medical treatment, a holding we do not disturb today, and not for the proposition that patients have a fundamental right

to obtain medical care from professionals who have not been determined by the regulating authority to be qualified to provide the desired service.[1]

¶18    A conclusion that Montanans have a fundamental right to seek medical care from un-licensed professionals would force the State and its licensing boards to demonstrate a compelling state interest in order to license and regulate health care professionals. The State would, in effect, "shoulder the burden of demonstrating that no less restrictive set of qualifications for a license could serve the state's interest in protecting the health of its citizens." *Sammon*, 66 F.3d at 645, n.9. Under such a rule, regulation of health care professions necessary for the public's protection would become very difficult, if not impossible, for the State to undertake.

¶19    It is clear that the State of Montana has a police power by which it can regulate for the health and safety of its citizens. *State v. Skurdal* (1988), 235 Mont. 291, 294, 767 P.2d 304, 306. Furthermore, this Court has recognized that the State's exercise of its police powers often implicates individual rights. *State v. Rathbone* (1940), 110 Mont. 225, 241, 100 P.2d 86, 92. However, when the rights affected are not fundamental, we do not utilize strict scrutiny review, requiring a compelling state interest. *Peterson v. Great Falls Sch.*

---

[1]We are not the only court to reject *Andrews* on this point. *See Mitchell v. Clayton* (7th Cir. 1993), 995 F.2d 772, 775-76 (holding no fundamental right to acupuncture where the government reasonably prohibited that type of treatment or provider); *Sammon v. New Jersey Bd. of Medical Examiners* (3rd Cir. 1995), 66 F.3d 639, 644-45, n.9 (rejecting proposition that regulation of midwifery infringed fundamental rights); *Connecticut v. Menillo* (1975), 423 U.S. 9, 10-11, 96 S.Ct. 170, 171-72, 46 L.Ed.2d 152, 154-55 (restricting abortions by non-physicians does not implicate fundamental right to privacy); *Carnohan v. United States* (9th Cir. 1980), 616 F.2d 1120, 1122 (no right to use medical drugs free of government police power).

*Dist. No. 1 & A* (1989), 237 Mont. 376, 380, 773 P.2d 316, 318. Instead, the State need only demonstrate a rational basis for the regulation. *Peterson*, 237 Mont. at 380, 773 P.2d at 318.

¶20     Here, Appellants argue that the right to obtain medical care free of regulation is a fundamental right, and that the State's regulation of that right must be supported by a compelling state interest. As noted above, we disagree with Appellants' contention that the fundamental right extends that broadly, and therefore, Appellants' argument must fail. Furthermore, because Appellants did not argue, and the District Court did not decide, if the Partial Denture Rule was rationally related to a legitimate state interest, we decline to reach that issue today.

***Issue 2: Does the Board of Dentistry's Partial Denture Rule impermissibly infringe upon denturists' state constitutional right to pursue employment?***

¶21     Article II, Section 3 of the Montana Constitution guarantees to Montanans the right to pursue, "life's basic necessities . . . in all lawful ways." Art. II, Sec. 3, Mont. Const. This Court has held that this section provides a fundamental right to the citizen to pursue employment. *Wadsworth v. State* (1996), 275 Mont. 287, 299, 911 P.2d 1165, 1172. Relying on *Wadsworth*, Appellant denturists argue that they have a fundamental right to practice denturity free of regulation.

¶22     Although *Wadsworth* demonstrates that Appellants have a fundamental right to "pursue" denturity as a profession, it does not follow thereafter that denturists have a fundamental right to practice denturity free of all regulation. The regulatory purpose in promulgating the Partial Denture Rule was stated by the BOD as follows:

8

The Board has considered all the comments, both written and oral. Giving great weight to its obligation to protect the public, the Board concludes that it is in the best interests of the Montana public to require by rule that prior to the preparation or fitting or [sic] partial dentures, denturists shall refer all partial denture patients to a dentist for examination, evaluation and/or treatment that the dentist may deem necessary prior to the insertion of the partials. The consequences of insertion of partials into an inadequately prepared, or compromised, mouth may be serious dental problems for the patient.

Although we do not address in this case the validity or rationality of the Board's expressed reason for the rule, we cite to the BOD's reason to illustrate that the rule does not bar denturity, and that Appellants remain free to pursue the profession. With regard to partial denture work, § 37-29-403, MCA, authorizes denturists to see patients as long as they obtain a dentist's referral first. These conditions render this case distinguishable from *Wadsworth*.

¶23 In *Wadsworth*, this Court evaluated a Department of Revenue (DOR) rule forbidding state real estate appraisers from doing appraisal work in their free time. *Wadsworth*, 275 Mont. at 292, 911 P.2d at 1168. State appraisers challenged the rule as violating their constitutional right to pursue employment. This Court agreed, holding that the state appraisers had a fundamental right to pursue employment, and further holding that the state rule forbidding independent employment violated that right. *Wadsworth*, 275 Mont. at 306, 911 P.2d at 1176. However, the DOR employees in *Wadsworth* were completely proscribed from independently appraising, barred from pursuing employment in their free time by the DOR rule. Here, denturists remain free to pursue denture work generally, and further, are

9

not completely proscribed from performing partial denture work. The Partial Denture Rule merely[2] requires a dentist's referral.

¶24    As mentioned in the above discussion concerning privacy rights, the State of Montana holds police power to regulate for the health and welfare of its citizens. *Skurdal*, 235 Mont. at 294, 767 P.2d at 306; *see also State ex rel. Bennett v. Stow* (1965), 144 Mont. 599, 620, 399 P.2d 221, 231. Furthermore, the idea that the right to pursue employment and life's other "basic necessities" is limited by the State's police power is imbedded in the plain language of the Constitution. Article II, Section 3 states that citizens have the right to pursue "life's basic necessities . . . *in all lawful ways*." Art. II, Sec. 3, Mont. Const. (emphasis added). The Constitution is clear. While it granted the fundamental right to pursue employment, it also circumscribed that right by subjecting it to the State's police power to protect the public's health and welfare. "[L]iberty is necessarily subordinate to reasonable restraint and regulation by the state in the exercise of its sovereign prerogative—police power." *State v. Safeway Stores* (1938), 106 Mont. 182, 203, 76 P.2d 81, 86. Accordingly, while one does have the fundamental right to pursue employment, one does not have the fundamental right to practice his or her profession free of state regulation promulgated to protect the public's welfare.

¶25    Appellants argued to both the District Court and to this Court that their right to pursue denturity free of regulation was a fundamental right, and that infringement upon that right

---

[2]We do not mean to minimize the impediment to their business which denturists see in the Rule's application. We mean only to illustrate the distinction between this rule and the rule struck down in *Wadsworth*.

had to be reviewed with strict scrutiny. For the reasons above, we disagree. Furthermore, because Appellants did not argue, and the District Court did not decide, that the Partial Denture Rule failed minimal or rational basis review, we decline to take up that issue today.

***Issue 3: Do Board of Dentistry policies, membership, and restrictions on denturity violate denturists' federal due process and § 1983 rights?***

¶26     Appellant denturists argue that the BOD regulations, policies, and membership violate their federal due process rights. Furthermore, the denturists attempt to state a claim under § 1983. For the following reasons, Appellants' arguments fail.

¶27     First, Appellants challenge the placement of denturists under the regulatory control of the BOD. Specifically, Appellants argue that because of BOD bias against denturity, BOD regulation of denturity violates denturist's federal due process rights. Appellants argue BOD bias against them because (1) the BOD is composed of mostly dentists, and (2) the American Dental Association, a group to which BOD member dentists belong, is on record as opposing denturists and the denturity profession.

¶28     Similar claims were made and rejected in *Friedman v. Rogers* (1979), 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100. In *Friedman* the United States Supreme Court noted that due process did not require the Legislature to create regulatory boards that are equally represented by all professions subject to its regulations. *Friedman*, 440 U.S. at 18, 99 S.Ct. at 898, 59 L.Ed.2d at 115. Further, the Court, presented with a claim that commercial optometrists were not fairly regulated by the Texas Board of Optometry, held that commercial optometrists had "no constitutional right to be regulated by a Board that is sympathetic to the commercial practice of optometry." *Friedman*, 440 U.S. at 18, 99 S.Ct.

at 898, 59 L.Ed.2d at 115. The same rationale applies here. While denturists can challenge specific action of the BOD as violating due process, that the BOD regulates the profession of denturity does not in itself violate due process, despite the under representation of denturists thereon. *See also Rayborn v. Mississippi State Bd. of Dental Examiners* (S.D. Miss. 1985), 601 F.Supp. 537, 539-40 (holding that denturists failed to state a claim in arguing that the Mississippi Dental Board's regulation of denturity in and of itself violated denturists due process rights).

¶29    Second, Appellants challenge BOD's promulgation of Rule 24.138.416, ARM (the Partial Denture Rule). In support, Appellants cite *Stivers v. Pierce* (9th Cir. 1995), 71 F.3d 732, for the proposition that a party is denied due process when it is deprived of an honest and independent decision maker. Appellants are correct; they have the right to be regulated by an honest and independent decision maker. However, even assuming a deprivation of a constitutionally protected interest in "life, liberty, or property," in the procedural due process context, the "deprivation . . . is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch* (1990), 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100, 114. "Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Zinermon*, 494 U.S. at 126, 110 S.Ct. at 983, 108 L.Ed.2d at 114.

¶30    Here, Appellants have not shown that the procedures afforded them are inadequate. In fact, based on the record before us, it is clear that Appellants have not even sought the

12

process to which they are entitled. Montana's Administrative Procedure Act (MAPA) addresses the issue of bias. Section 2-4-611(4), MCA, allows a party to challenge the bias or independence of an agency member, and in such cases, requires the agency to include its determination as part of the record. Furthermore, § 2-4-702, MCA, allows for judicial review of such bias decisions. Appellants, however, have not utilized those administrative remedies. While this Court has stated that statutes providing judicial review of orders by biased commissioners satisfy due process, *Schneeman v. Dep't of Labor & Industry* (1993), 257 Mont. 254, 259, 848 P.2d 504, 507, we have also stated that "it is a general principle that if an administrative remedy is provided by statute, that relief must be sought from the administrative body and the statutory remedy exhausted before relief can be obtained by judicial review." *State ex rel. Jones v. Giles* (1975), 168 Mont. 130, 132, 541 P.2d 355, 357. Here, not only do the available procedures appear fair, but Appellants have failed to use them. For those reasons, their due process claims must fail.

¶31 Finally, there can be no § 1983 claim if there has not been a deprivation of a constitutional right. Since we hold that Appellants were not deprived of due process, their § 1983 claim fails.

***Issue 4: Do Board of Dentistry restrictions on denturity constitute unlawful restraint on trade?***

¶32 The fourth challenge to the BOD is that its restrictions on denturity violate § 30-14-205(2), MCA, of the Montana Unfair Trade Practices and Consumer Protection Act (MUTPA). That statute states that,

It is unlawful for a person or group of persons, directly or indirectly:

13

> (2) for the purpose of creating or carrying out any restriction in trade, to: . . . (c) prevent competition in the distribution or sale of merchandise or commodities.

Section 30-14-205(2)(c), MCA. Before we can evaluate the purported violation of § 30-14-205(2)(c), MCA, however, we must address the threshold question of whether the BOD is a "person" subject to restriction under MUTPA.

¶33   We addressed the question of whether state agencies were "persons" under MUTPA in *Montana Vending Co. v. Coca-Cola Bottling, Inc.*, 2003 MT 282, 318 Mont. 1, 78 P.3d 499. There we stated that, "the plain and ordinary interpretation of this language is that MUTPA was created to apply to *businesses*, not government." *Montana Vending Co.*, ¶ 34 (emphasis in original). As such, we held in *Montana Vending Co.* that school districts were not "persons" under MUTPA. *Montana Vending Co.*, ¶ 37. The same reasoning is applicable here. Furthermore, as a matter of common sense, it is clear that the Legislature, in designing the regulatory structure for denturists and dentists, did not envision the BOD's regulatory function could somehow constitute the unlawful restraint of trade. Thus, we hold that the BOD, like school districts, is not subject to MUTPA. Accordingly, Appellants have not stated a claim of unfair trade practices as a matter of law.

                                    CONCLUSION

¶34   This case is before us on a grant of summary judgment. After review, we conclude the District Court correctly held that Appellants' constitutional rights were not infringed. Furthermore, we hold that Appellants' claim under MUTPA fails as a matter of law. As such, the District Court properly granted summary judgment to Respondents.

14

¶35 Affirmed.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER