JUSTICE WHEAT
delivered the Opinion of the Court.
¶ 1 The State of Montana (“State”) appeals from an order preliminarily enjoining parts of the Montana Marijuana Act, § 50-46-301 et seq., MCA. Montana Cannabis Industry Association, Mark Matthews, *226 Shirley Hamp, Shelly Yeager, Jane Doe, John Doe #1, John Doe #2, Michael Geci-Black, John Stowers, Point Hatfield, and Charlie Hamp (collectively “the Plaintiffs”) cross-appeal from the same order. We reverse and remand.
BACKGROUND
¶2 In 2004, Montana voters approved the use of medical marijuana through the passage of 1-148, the Medical Marijuana Act. The 2004 Medical Marijuana Act left in place those provisions in the Montana criminal code that make it illegal to cultivate, possess, distribute or use marijuana, while simultaneously protecting authorized users of medical marijuana from being prosecuted. Section 50-46-201(1), MCA (2009) (repealed 2011). In 2011, the Montana Legislature, in response to a drastic increase of caregivers and medical marijuana users, passed House Bill 161, which repealed 1-148. The Governor vetoed House Bill 161, and in response, the Legislature enacted Senate Bill 423, which repealed the 2004 Medical Marijuana Act and replaced it with the Montana Marijuana Act (“MMA”), § 50-46-301 et seq., MCA, which dramatically changed the landscape for the cultivation, distribution, and use of marijuana for medical purposes.
¶3 On May 13, 2011, the Plaintiffs filed a lawsuit seeking to both temporarily and permanently enjoin the implementation of the MMA in its entirety. Based on a motion filed with the complaint, the District Court immediately entered a temporary restraining order blocking implementation of § 50-46-341, MCA, which prohibited the advertising of “marijuana or marijuana-related products” and which was scheduled to take effect that day. By stipulation, the temporary restraining order remained in effect pending the preliminary injunction hearing. A hearing on the preliminary injunction was held June 20 through 22, 2011.
¶4 On June 30,2011, the District Court issued its Order on Motion for Preliminary Injunction. In its Order, the District Court enjoined the following relevant subsections of § 50-46-308, MCA:
(3) (a) (i) A provider or marijuana-infused products provider may assist a maximum of three registered cardholders.
(ii) A person who is registered as both a provider and a marijuana-infused products provider may assist no more than three registered cardholders.
(b) If the provider or marijuana-infused products provider is a registered cardholder, the provider or marijuana-infused products provider may assist a maximum of two registered cardholders *227 other than the provider or marijuana-infused products provider. (4) A provider or marijuana-infused products provider may accept reimbursement from a cardholder only for the provider’s application or renewal fee for a registry identification card issued under this section.
(6) A provider or marijuana-infused products provider may not:
(a) accept anything of value, including monetary remuneration, for any services or products provided to a registered cardholder;
(b) buy or sell mature marijuana plants, seedlings, cuttings, clones, usable marijuana, or marijuana-infused products[.]
¶5 The District Court preliminarily enjoined a number of sections of the MMA; however, only §§ 50-46-308(3), (4), (6)(a) and (6)(b), MCA, are pertinent to this opinion. The District Court found that these sections substantially implicated the Plaintiffs’ fundamental rights to pursue employment, to seek one’s own health in all lawful ways, and to privacy. Because the sections substantially implicated the Plaintiffs’ fundamental rights, the District Court applied a strict scrutiny analysis, and determined that the Plaintiffs would suffer irreparable harm if the court did not enjoin these provisions.
¶6 The District Court also enjoined §§ 50-46-341, -329(l)-(3), and - 303(10), MCA, which are not at issue in this appeal. The remaining provisions of the MMA were not enjoined and, in accordance with the severability clause of the MMA, were allowed to take effect.
¶7 After the District Court issued its Order on the Motion for Preliminary Injunction, the State appealed and the Plaintiffs cross-appealed. We restate the issues on appeal as follows:
¶8 Issue One: Did the District Court err when it applied a strict scrutiny, fundamental rights analysis to preliminarily enjoin §§ 50-46-308(3), (4), (6)(a) and (6)(b), MCA?
¶9 Issue Two: Did the District Court err in not enjoining § 50-46-308(2), MCA?
¶10 Issue Three: Did the District Court err in not enjoining § 50-46-308(7), MCA?
¶11 Issue Four: Did the District Court err in declining to enjoin the MMA in its entirety?
STANDARD OF REVIEW
¶12 We typically review a district court’s granting or denying a preliminary injunction for a manifest abuse of discretion. City of Great Falls v. Forbes, 2011 MT 12, ¶ 9, 359 Mont. 140, 247 P.3d 1086. *228 However, where the district court grants or denies injunctive relief based on conclusions of law, no discretion is involved, and we review the conclusions of law to determine whether they are correct. Valley Christian Sch. v. Mont. High Sch. Assn., 2004 MT 41, ¶ 5, 320 Mont. 81, 86 P.3d 554 (citing Hagener v. Wallace, 2002 MT 109, ¶ 12, 309 Mont. 473, 47 P.3d 847).
DISCUSSION
¶13 As a threshold issue, Plaintiffs argue that the State’s appeal of only one of four paragraphs, ¶ 1(d),[1] of the District Court’s preliminary injunction order, while reserving other defenses, is an improper request for an interlocutory advisory opinion. We may, however, review “an order granting or dissolving, or refusing to grant or dissolve, an injunction or attachment.” M. R. App. P. 6(3)(e). This rule allows an immediate appeal from a preliminary injunction. State v. BNSF Ry. Co., 2011 MT 108, ¶ 15, 360 Mont. 361, 254 P.3d 561. A party is not obligated to appeal the entire preliminary injunction, but instead, may ask this Court to separately review specific provisions within an order granting an injunction. See e.g. St. James Healthcare v. Cole, 2008 MT 44, ¶ 54, 341 Mont. 368, 178 P.3d 696. Moreover, in our review of a preliminary injunction, we may review whether the district court applied the proper level of judicial scrutiny to enjoin an allegedly unconstitutional statute. See Butte Community Union v. Lewis, 219 Mont. 426, 430-31, 712 P.2d 1309, 1311-12 (1986). Accordingly, we will review the State’s appeal of ¶ 1(d) of the preliminary injunction order. ¶14 Section 27-19-201, MCA, authorizes the issuance of a preliminary injunction when it appears that the applicant is entitled to the relief sought; the commission of an act by a party would cause irreparable harm to the applicant; or the adverse party is doing something that threatens to violate the applicant’s rights, respecting the subjects of the action. These requirements are in the disjunctive, meaning that findings that satisfy one subsection are sufficient. Sweet Grass Farms, Ltd. v. Bd. of County Commrs. of Sweet Grass County, 2000 MT 147, ¶ 27, 300 Mont. 66, 2 P.3d 825.
*229 ¶15 In granting the preliminary injunction in this case, the District Court limited its analysis to the question of irreparable injury. The court properly concluded that the loss of a constitutional right constitutes irreparable harm for the purpose of determining whether a preliminary injunction should be issued. Elrod v. Burns, 427 U.S. 347, 373, 96 S. Ct. 2673, 2689-690 (1976).
¶ 16 In order to determine if a constitutional right has been lost, a court must first determine which of the established levels of scrutiny is appropriately applied: strict scrutiny, middle-tier scrutiny or the rational basis test. See Snetsinger v. Mont. Univ. Sys., 2004 MT 390, ¶ 17, 325 Mont. 148, 104 P.3d 445. Legislation that implicates a fundamental constitutional right is evaluated under a strict scrutiny standard, whereby the government must show that the law is narrowly tailored to serve a compelling government interest. Snetsinger, ¶ 17. If a law or policy affects a right conferred by the Montana Constitution, but is not found in the Constitution’s declaration of rights, we apply middle-tier scrutiny. Snetsinger, ¶ 18. If neither strict scrutiny nor middle-tier scrutiny apply, the rational basis test is appropriate. Pursuant to the rational basis test, the statute must be rationally related to a legitimate government interest. Snetsinger, ¶ 19.
¶17 Looking to these standards, the District Court determined that §§ 50-46-308(3), (4), 6(a) and 6(b), MCA, substantially implicate the fundamental rights to employment, to pursue one’s own health, and to privacy. Accordingly, the District Court applied a strict scrutiny analysis and enjoined those sections. The State, on appeal, argues that the District Court improperly applied strict scrutiny, and instead, should have applied the rational basis test. The Plaintiffs argue that the District Court correctly applied strict scrutiny, and implicitly concede that if strict scrutiny does not apply, the appropriate level of scrutiny is the rational basis test and not middle-tier scrutiny. We will address each right in turn.
1. RIGHT TO EMPLOYMENT
¶18 The District Court determined that because the State has declared medical marijuana a legal product in Montana, with an established licensing and distribution system through providers, then the MMA’s prohibition of remuneration substantially implicates the fundamental right to employment. The right of the opportunity to pursue employment is a fundamental right that is embodied within Article II, Section 3 of the Montana Constitution, which provides:
All persons are bom free and have certain inalienable rights. They include the right to a clean and healthful environment and the *230 rights of pursuing life's basic necessities, enjoying and defending their lives and liberties, acquiring, possessing and protecting property, and seeking their safety, health and happiness in all lawful ways. In enjoying these rights, all persons recognize corresponding responsibilities.
While the right to the opportunity to pursue employment is not specifically enumerated, it is a fundamental right because it is a right without which other constitutionally guaranteed rights would have little meaning. Wadsworth v. State, 275 Mont. 287, 299, 911 P.2d 1165, 1172 (1996). This right, though, is limited. It does not “grant a right or property interest in any particular job or employment.” Wadsworth, 275 Mont. at 301, 911 P.2d at 1173 (emphasis in original).
¶19 We clarified the boundaries of the right to pursue employment in Wiser v. State, 2006 MT 20, 331 Mont. 28, 129 P.3d 133. In Wiser, denturists challenged the constitutionality of a Board of Dentistry rule requiring that denturists refer all partial denture patients to dentists before providing partial denture services. Wiser, ¶ 10. The denturists, in part, relied upon the right to pursue employment to challenge the rule. In concluding that the rule did not warrant strict scrutiny analysis, this Court noted,
[T]he idea that the right to pursue employment and life’s other ‘basic necessities’ is limited by the State’s police power is imbedded in the plain language of the Constitution. Article II, Section 3 states that citizens have the right to pursue ‘life’s basic necessities ... in all lawful ways.’ Art. II, Sec. 3, Mont. Const.
Wiser, ¶ 24 (emphasis in original). Continuing, this Court observed that “[t]he Constitution is clear. While it granted the fundamental right to pursue employment, it also circumscribed that right by subjecting it to the State’s police power to protect the public health and welfare.” Wiser, ¶ 24 (emphasis added).
¶20 Here, the District Court concluded that the MMA’s prohibition of the right to sell medical marijuana substantially implicated the fundamental right to pursue employment. However, under Wadsworth and Wiser, although individuals have a fundamental right to pursue employment, they do not have a fundamental right to pursue a particular employment or employment free of state regulation.
¶21 In this case, the legislature, in its exercise of the State's police powers, decided that it would legalize the limited use of medicinal marijuana while maintaining a prohibition on the sale of medical marijuana. This action prohibits employment as a medical marijuana provider, but as noted in Wadsworth, an individual has no property *231 interest in a “particular job or employment.” Providers, who are ultimately horticulturists, remain free to pursue horticulture work generally, and further, are not proscribed from practicing the art of horticulture-including hydroponic horticulture - for profit. Thus, the MMA does not implicate the fundamental right to employment, and we reverse the District Court’s holding on this issue.
2. RIGHT TO SEEK HEALTH
¶22 The District Court next concluded that denying providers compensation and limiting the number of cardholders that each provider can serve will substantially implicate Montanans’ fundamental right to seek their health in a lawful manner because such restrictions deny access to medical marijuana, which is otherwise a legal product. The fundamental right to seek health is found in Article II, Section 3 of the Montana Constitution and provides that Montanans have a fundamental right to “seek[] their safety, health and happiness in all lawful ways.” (Emphasis added.) As with the right to pursue employment, the Constitution is clear that the right to seek health is circumscribed by the State’s police power to protect the public’s health and welfare. See Wiser, ¶ 24.
¶23 In pursuing one’s own health, an individual has a fundamental right to obtain and reject medical treatment. Wiser, ¶ 17. But, this right does not extend to give a patient a fundamental right to use any drug, regardless of its legality. No court has acceded to this type of affirmative access claim, and Plaintiffs cite to none. See Abigail Alliance for Better Access to Developmental Drugs v. Von Eschenbach, 495 F.3d 695, n. 18, (D.C. Cir. 2007).[2]
¶24 Thus, we conclude, in pursuing health, an individual does not have a fundamental affirmative right of access to a particular drug. A patient’s “selection of a particular treatment, or at least a medication, is within the area of governmental interest in protecting public health,” and regulation of that medication does not implicate a fundamental constitutional right. Rutherford v. U.S., 616 F.2d 455, 457 (10th Cir. 1980). Because the fundamental right to seek one’s own health is not implicated, the District Court erred when it applied a strict scrutiny *232 analysis.
3. RIGHT TO PRIVACY
¶25 The District Court also concluded that the restrictions substantially implicated the fundamental right to privacy found in Article II, Section 10, of the Montana Constitution. In reaching its decision, the District Court relied exclusively on Armstrong v. State, 1999 MT 261, 296 Mont. 361, 989 P.2d 364. The State argues that the District Court’s reliance on Armstrong was misplaced because of our subsequent holding in Wiser, ¶ 20, and because it is factually distinguishable. We agree with the State.
¶26 In Armstrong, the plaintiffs challenged a state law prohibiting certified physicians assistants from performing abortions. This Court struck down the law because it infringed on an individual’s personal autonomy protected by the right to privacy. Armstrong, ¶ 75. In so holding, this Court noted that the purpose of the law was clearly “to make it as difficult, as inconvenient and as costly as possible for women to exercise their right to obtain, from the health care provider of their choice, a specific medical procedure” protected by both the U.S. and Montana constitutions. Armstrong, ¶ 65.
¶27 This Court concluded in Armstrong that the right to health care is a fundamental privacy right, but only to the extent that it protects an individual’s right to obtain a particular lawful medical procedure. Wiser, ¶ 15, (citing Armstrong, ¶ 62). In Wiser, ¶ 15, this Court circumscribed its holding in Armstrong when we stated that “it does not necessarily follow from the existence of the right to privacy that every restriction on medical care impermissibly infringes that right.” The Wiser Court additionally determined that an individual does not have a fundamental right to obtain medical care free of regulation. Wiser, ¶ 20. Thus, while the right to privacy is certainly implicated when a statute infringes upon a person’s ability to obtain or reject a lawful medical treatment, it does not follow that the right to privacy is necessarily implicated when a statute regulates a particular medication. See Wiser, ¶ 20; Armstrong, ¶ 65.
¶28 Plaintiffs argue, and the District Court concluded, that in accordance with this standard, the State’s regulation of medical marijuana falls under our analysis in Armstrong and not Wiser. In that regard, the Plaintiffs, and the District Court, are wrong. In Armstrong, the statute at issue prevented individuals from receiving a lawful, constitutionally protected medical procedure, abortion. Both the U.S. Supreme Court and this Court recognized that prohibiting a woman from obtaining an abortion violates her personal autonomy, and *233 therefore, her right to privacy. See Roe v. Wade, 410 U.S. 113, 153, 93 S. Ct. 705, 727 (1973); Armstrong, ¶ 75. Unlike Roe and Armstrong, Plaintiffs’ alleged affirmative right to access a particular drug has not been constitutionally protected under the right to privacy. In fact, no court has acceded to the notion that the right to privacy encompasses an affirmative right to access a particular drug or treatment. See Abigail Alliance, 495 F.3d at n. 18.
¶29 One such claim was expressly rejected by the California Supreme Court in People v. Privitera, 591 P.2d 919 (Cal. 1979). There, the defendants were convicted of the felony of conspiracy to sell and to prescribe an unapproved drug — Laetrile—intended to alleviate cancer. The defendants argued on appeal that the statute prohibiting the sale of an unapproved cancer drug was unconstitutional because it violated the defendants’ fundamental right to privacy under the federal and California constitutions. Privitera, 591 P.2d at 921. The court rejected the defendants’ contention and concluded that “the asserted right to obtain drugs of unproven efficacy is not encompassed by either the right of privacy embodied in either the federal or the state Constitutions.” Privitera, 591 P.2d at 921 (emphasis in original). Because the right to Laetrile was not embodied in either constitution, the court relied on the rational basis test to determine the constitutionality of the law. Privitera, 591 P.2d at 921.
¶30 Following Privitera, the Ninth Circuit, in Carnohan v. United States, 616 F.2d 1120 (1980), similarly considered whether the right to privacy encompasses the right to use Laetrile free of government regulation. In Carnohan, the plaintiff brought suit to secure a right to Laetrile, which the U.S. Food and Drug Administration (FDA) had yet to approve for distribution. The plaintiff argued that the FDA’s regulatory scheme was so burdensome as applied to individuals that it infringed upon his constitutional rights. The court applied the rational basis test in evaluating Camohan’s claim because the “[cjonstitutional rights of privacy and personal liberty do not give individuals the right to obtain laetrile free of the lawful exercise of government police power.” Carnohan, 616 F.2d at 1122 (emphasis added); See also Rutherford, 616 F.2d at 457.
¶31 Similarly, the plaintiffs in County of Santa Cruz v. Ashcroft, 279 F. Supp. 2d 1192 (N.D. Cal. 2003), sought to enjoin enforcement of the Controlled Substances Act (CSA), 21 U.S.C. § 801 et seq., against patients using medical marijuana in compliance with California’s Compassionate Use Act, Cal. Health & Safety Code § 11362.5 (Lexis 2002), because the CSA’s regulation of marijuana violated the plaintiffs’ *234 fundamental right to alleviate pain and suffering. In analyzing the plaintiffs’ argument, the court stated:
Plaintiffs submit compelling declarations that medicinal marijuana is the best means for certain Patient-Plaintiffs to avoid debilitating pain and suffering. Defendants do not dispute this evidence, but they note that the Patient-Plaintiffs only are deprived of the right to use a specific type of treatment and are not deprived of the recognized right to treatment generally. While Plaintiffs claim that marijuana is the only means for certain Patient-Plaintiffs to avoid extreme pain and suffering, the record does not necessarily support that conclusion. The fact that the Patient-Plaintiffs have experienced relief from pain as a result of their marijuana use does not mean that other, legal, means of pain relief are unavailable.
County of Santa Cruz, 279 F. Supp. 2d at 1203 (emphasis in original). Based on these arguments, the court determined that the plaintiffs did not have a constitutionally protected fundamental right to use medical marijuana and denied their request for an injunction. County of Santa Cruz, 279 F. Supp. 2d at 1204.
¶32 We agree with the above cases, and conclude the right to privacy does not encompass the affirmative right of access to medical marijuana. The Plaintiffs may decry that the Legislature gutted 1-148, but it was within the Legislature’s right to do so, Bottomly v. Ford, 117 Mont. 160, 169, 157 P.2d 108, 115 (1945), and the new medical marijuana framework does not suddenly raise the affirmative right to access a particular drug to a fundamental right protected by our Constitution. Moreover, the Plaintiffs cannot seriously contend that they have a fundamental right to medical marijuana when it is still unequivocally illegal under the Controlled Substances Act. 21 U.S.C. §§ 812(c), 841; Gonzales v. Raich, 545 U.S. 1, 22, 125 S. Ct. 2195, 2209 (2005). We accordingly reverse the District Court’s holding that the MMA substantially implicates the Plaintiffs’ fundamental right to privacy.
¶33 Issues Two, Three and Four.
¶34 Because we are remanding Issue One to the District Court, we decline to address Issues Two, Three and Four.
CONCLUSION
¶35 For the reasons stated above, we reverse and remand to the District Court to apply the rational basis test to determine whether §§ 50-46-308(3), (4), (6)(a) and (6)(b), MCA, should be enjoined.
*235 CHIEF JUSTICE McGRATH, JUSTICES RICE, BAKER and MORRIS and DISTRICT JUDGE WATTERS, sitting for JUSTICE COTTER concur.

 In ¶ 1(d) of its preliminary injunction, the District Court ordered that “[t]he State of Montana is hereby enjoined from enforcing the following sections of Senate Bill 423 ... Sections 5(3), 5(4), and 5(6)(a) and (b), the section entitled “Provider types-requirements-limitations-activities.” These sections correspond to §§ 50-46-308(3), (4), (6)(a) and (6)(b), MCA, of the MMA. The State did not appeal ¶¶ 1(a), (b) or (c) of the District Court’s order. In these paragraphs the District Court enjoined sections 20,14(1), 14(2), 14(3), and 3(10) of SB 423, which correspond to §§ 50-46-341, -329(l)-(3), and -303(10), MCA.

 In State v. Nelson, 2008 MT 359, ¶¶ 27, 33, 346 Mont. 366, 195 P.3d 826, we described the use of medical marijuana as a “right.” However, the right to use marijuana for medical purposes was limited to use in accordance with the 2004 Medical Marijuana Act, and even though the right existed, our conclusion specifically noted that there may be “restrictions on lawful medical marijuana use.” Nelson, ¶ 33. Furthermore, Nelson did not involve the constitutional claims asserted in this case, and is no longer applicable because the 2004 Act has been repealed.