JUSTICE NELSON,
dissenting.
¶36 I dissent. In my view, this case does not present a justiciable controversy. As such, our only permissible course of action is to vacate the District Court’s decision and remand with instructions to dismiss the action. Even reaching the merits of the issues, however, I have concerns with the breadth of some of the statements in the Court’s Opinion. I address these two points in turn.
I. Justiciability
¶37 I discussed the question of justiciability vis-a-vis the medical marijuana laws in Med. Marijuana Growers Assn. v. Corrigan, 2012 MT 146, ¶¶ 31-40, 365 Mont. 346, 281 P.3d 210 (Nelson, J., concurring). I reiterate and expand on that discussion here.
¶38 My consideration of justiciability is premised on two fundamental and undisputed principles. First, courts have an independent obligation to determine whether jurisdiction exists and, thus, whether the constitutional requirement of a “justiciable controversy” has been met. Plan Helena, Inc. v. Helena Regl. Airport Auth. Bd., 2010 MT 26, ¶ 11, 355 Mont. 142, 226 P.3d 567. A court must address sua sponte whether it has proper jurisdiction over the case before it. State v. Bonamarte, 2006 MT 291, ¶ 5, 334 Mont. 376, 147 P.3d 220. Second, if a court determines that it lacks jurisdiction, then it may take no further action in the case other than to dismiss it. Plan Helena, ¶ 11. I believe the Court errs in failing to determine, as a threshold matter, whether we even have jurisdiction to decide the issues raised by the parties.
¶39 The courts of Montana do not have the power to issue advisory opinions or to decide moot questions. Plan Helena, ¶¶ 9, 11; Progressive Direct Ins. Co. v. Stuivenga, 2012 MT 75, ¶ 17, 364 Mont. 390, 276 P.3d 867. This limitation derives from the Montana Constitution, which limits the judicial power of Montana’s courts to deciding only justiciable controversies. Plan Helena, ¶ 6; Greater Missoula Area Fedn. v. Child Start, Inc., 2009 MT 362, ¶ 22, 353 Mont. 201, 219 P.3d 881. A justiciable controversy is one that is “definite and concrete, touching legal relations of parties having adverse legal interests” and “admitting of specific relief through decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts, or upon an abstract proposition.” Reichert v. State, 2012 MT 111, ¶ 53, 365 Mont. 92, 278 P.3d 455 (internal quotation marks omitted). To be justiciable the controversy must, among other things, *236 “be one upon which a court’s judgment will effectively and conclusively operate, as distinguished from a dispute invoking a purely political, administrative, philosophical, or academic conclusion.” Reichert, ¶ 53. The “cases” and “controversies” that are within the judicial power to determine do not include “abstract differences of opinion.” Plan Helena, ¶ 9 (internal quotation marks omitted).
¶40 In 2004, Montanans adopted Initiative No. 148 which created the Medical Marijuana Act. See Title 50, chapter 46, MCA (2005). The Legislature has since tinkered with the Act, going so far as to scrap the original voter-approved scheme entirely and replace it with a new and improved Montana Marijuana Act. See Opinion, ¶ 2; Laws of Montana, 2011, ch. 419; Title 50, chapter 46, part 3, MCA (2011). Yet, with due respect to, and without impugning the zeal and good faith of, everyone involved in this continuing fiasco, the fact remains that Montana’s medical marijuana laws, in effect, purport to make legal conduct that is violative of the federal Controlled Substances Act (84 Stat. 1242, 21 U.S.C. § 801 et seq.). During oral argument, counsel for the State and counsel for Plaintiffs suggested this was not true-that Montana’s medical marijuana laws do not legalize the use, possession, or distribution of marijuana, but instead provide an “affirmative defense” to a state-based criminal prosecution where the conduct at issue was in accordance with those laws. Such assertions, however, elevate form over substance. The truth is that Montana’s medical marijuana laws are intended to allow certain Montanans to engage in conduct which is criminal under federal law. Indeed, that is why many of these cases have arisen not in the context of a criminal prosecution, but in the form of an action for declaratory or injunctive relief: the plaintiffs seek a determination that they may use, possess, or distribute marijuana in Montana, federal law notwithstanding. The present case falls into that category, as does the Med. Marijuana Growers case. Cf. City of Deer Lodge ex rel. City of Deer Lodge Ordinances 130 & 136 v. Chilcott, 2012 MT 165, 365 Mont. 497, 285 P.3d 418 (a mandamus action seeking, in part, an interpretation of the medical marijuana laws).
¶41 Stripped to its core, the remarkable premise underlying Plaintiffs’ request for relief in this case is that they have a fundamental right under the Montana Constitution to engage in conduct which is criminal under federal law. Indeed, no matter what this Court might hold in this case or any of the other medical marijuana cases, the underlying assumption of everyone involved is that the plaintiffs intend to go out and violate the federal Controlled Substances Act. That Montana’s courts have become complicit in this endeavor (by taking up questions *237 regarding the interpretation of Montana’s medical marijuana laws in the absence of an actual underlying criminal prosecution) is shocking. ¶42 I disagree with the premise implicit in the Court’s approach-namely, that it is appropriate for state legislatures to enact laws which purport to make lawful conduct which federal law has already dictated is unlawful. Despite the Court’s, the Legislature’s, and the Plaintiffs efforts, marijuana possession and distribution cannot simultaneously be both lawful and unlawful-except, perhaps, inside Schrodinger’s cat’s box.[1] Indeed, it is axiomatic that federal laws prevail over contrary state laws. As the Supreme Court recently explained:
Federalism, central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect. From the existence of two sovereigns follows the possibility that laws can be in conflict or at cross-purposes. The Supremacy Clause provides a clear rule that federal law “shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.”
Arizona v. United States,_U.S._, 132 S. Ct. 2492, 2500 (2012) (citations omitted).[2]
¶43 Under the Supremacy Clause, state law must give way to federal law in certain circumstances, including “cases where compliance with both federal and state regulations is a physical impossibility.” Arizona, 132 S. Ct. at 2501 (internal quotation marks omitted). Under federal law, marijuana is classified as a Schedule I drug. Gonzales v. Raich, 545 U.S. 1, 14, 125 S. Ct. 2195, 2204 (2005). This classification renders the manufacture, distribution, or possession of marijuana a criminal offense. Gonzales, 545 U.S. at 14, 125 S. Ct. at 2204. It is a physical impossibility to comply with this federal law while, at the same time, engaging in the use, possession, or distribution of medical marijuana *238 which Plaintiffs claim Montana’s Constitution and statutes allow. Of course, Plaintiffs could avoid this conflict by simply refraining from engaging in such activities; however, they have indicated a desire not to do so. In this circumstance, federal law prevails over state law. Gonzales, 545 U.S. at 29, 125 S. Ct. at 2212 (“[Ljimiting the activity to marijuana possession and cultivation ‘in accordance with state law’ cannot serve to place respondents’ activities beyond congressional reach. The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail.”). And thus the question whether Plaintiffs’ use, possession, or distribution of marijuana is in compliance with Montana law involves a purely academic (and therefore nonjusticiable) determination. Reichert, ¶ 53.
¶44 Where the State has in fact commenced a civil or criminal proceeding in which one of Montana’s medical marijuana laws may provide a defense, and the defendant seeks dismissal or mounts a defense based on that law, it may then be necessary for this Court to interpret the medical marijuana laws within this specific context. See e.g. State v. Johnson, 2012 MT 101, 365 Mont. 56, 277 P.3d 1232; State v. Pirello, 2012 MT 155, 365 Mont. 399, 282 P.3d 662; State v. Stoner, 2012 MT 162, 365 Mont. 465, 285 P.3d 402. Setting such cases aside, however, when Montana’s courts are asked to interpret Montana’s medical marijuana laws, they are asked, in effect, to issue an opinion “advising what the law would be upon a hypothetical state of facts, or upon an abstract proposition.” Reichert, ¶ 53 (internal quotation marks omitted). The hypothetical state of facts is a world where the grower, caregiver, provider, or user is not already precluded by federal law from growing, distributing, selling, or using marijuana. Irrespective of whether the conduct at issue is permissible under Montana law, it is unlawful under federal law. A decree in favor of the medical marijuana grower, caregiver, provider, or user is consequently meaningless because their activities are illegal regardless.
¶45 Judicial officers (as well as members of the legislative and executive branches) take an oath to “support, protect and defend the constitution of the United States ....” Mont. Const, art. Ill, § 3. The Constitution of the United States provides, among other things, that “the Laws of the United States... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.” U.S. Const, art. VI, cl. 2 (emphasis added). This Court is thus bound by duly enacted federal law. Providing interpretations of Montana laws *239 that are clearly contrary to federal laws in the conduct they purport to authorize is in tension with our oath and duty to adhere to the federal laws. Providing such interpretations is also in tension with the constitutional limitation on judicial power precluding us from rendering advisory opinions. For these reasons, I conclude that Montana’s courts should not-indeed cannot-be required to issue opinions concerning state medical marijuana laws that are trumped by federal law and are mooted by reason of the Supremacy Clause. Again, I would recognize an exception where the State has in fact commenced a civil or criminal proceeding in which one of Montana’s medical marijuana laws may provide a defense, and the defendant seeks dismissal or mounts a defense based on that law. The present case is not such a proceeding, however.
¶46 I questioned the parties at oral argument about the applicability of the Supremacy Clause to the issues in this case. During the ensuing colloquies, counsel for the State and counsel for Plaintiffs opined that any attempt by the federal government to force Montana to criminalize marijuana use, possession, and distribution would run afoul of the Supreme Court’s “commandeering” doctrine. Under that doctrine, the federal government cannot compel the states to enforce federal laws or to enact or administer federal regulatory programs. New York v. United States, 505 U.S. 144, 112 S. Ct. 2408 (1992); Printz v. United States, 521 U.S. 898, 117 S. Ct. 2365 (1997). That is not what is happening here, however. Unlike the Ravalli County Sheriff/Coroner in Printz who complained that Congress could not command state executive officers to conduct background checks on prospective handgun purchasers, there is no complaint or allegation in the present case that Congress has commanded any Montana executive or legislative officials to enforce, enact, or otherwise implement laws pursuant to the Controlled Substances Act. More to the point, although Congress lacks the power to commandeer state governments, that fact does not render Plaintiffs’ use, possession, and distribution of marijuana any less unlawful under federal law. It is undisputed that Congress does have the power to declare the manufacture, distribution, or possession of marijuana a criminal offense. Gonzales, 545 U.S. 1, 125 S. Ct. 2195. The instant lawsuit seeks nothing more than a determination that Plaintiffs have a state constitutional right to violate this federal law. The Supremacy Clause answers that question with a resounding “No!”
¶47 In closing this discussion, I reiterate what I said in Med. Marijuana Growers. For the marijuana community-medical, commercial, and recreational-there is a solution to the problem. If the *240 anti-marijuana paradigm is to be changed, it must be changed at the federal level first. Congress has enacted federal laws making marijuana manufacture, distribution, and possession a criminal offense and, in the process, rendering any contrary state laws superfluous. Obviously, changing this paradigm will involve educating Congress and whoever is President and will require concerted political efforts nationwide to elect supportive legislators and not to reelect senators, representatives, and executives who are opposed to changing the marijuana paradigm. ¶48 In summary, the courts of Montana should not be required to devote any more time trying to interpret and finesse state laws that, ultimately, are contrary to federal law and the Supremacy Clause. After all, judges in Montana take an oath to support, protect, and defend the federal Constitution and are bound by federal laws, anything in the laws of this State to the contrary notwithstanding.
II. The Court’s Analysis
¶49 I believe the decisions of the District Court and this Court amount to advisory opinions. But because the Court has nevertheless chosen to discuss the merits of the issues on appeal, I briefly note my concern with certain aspects of the Court’s analysis.
¶50 For starters, the Court overlooks two fundamental principles relevant to Plaintiffs’ claims. First, this Court has held repeatedly that the rights enumerated in Article II of Montana’s Constitution (the Declaration of Rights) are fundamental constitutional rights. Kortum-Managhan v. Herbergers NBGL, 2009 MT 79, ¶ 25, 349 Mont. 475, 204 P.3d 693 (citing cases); Wadsworth v. State, 275 Mont. 287, 299, 911 P.2d 1165, 1172 (1996). Second, this Court has also held that strict scrutiny applies to an alleged infringement of a fundamental right. Gryczan v. State, 283 Mont. 433, 449, 942 P.2d 112, 122 (1997); Snetsinger v. Mont. Univ. Sys., 2004 MT 390, ¶ 17, 325 Mont. 148, 104 P.3d 445. Here, Plaintiffs’ claims are premised on Article II, Sections 3 and 10. Because Article II, Sections 3 and 10 are contained in the Declaration of Rights, it necessarily follows that they are fundamental rights to which strict scrutiny applies. The Court is thus wrong in directing the District Court to analyze Plaintiffs’ claims using a “rational basis” standard. Opinion, ¶ 35. We do not apply rational-basis review to legislation which regulates the exercise of a fundamental right.
¶51 Indeed, it is a cardinal principle of constitutional law that Montana’s Constitution “is the supreme law of this State” and its mandate “must be followed by each of the three branches of government.” Associated Press v. Bd. of Pub. Educ., 246 Mont. 386, 391, *241 804 P.2d 376, 379 (1991). A well-established corollary of this rule is that where a statute or administrative regulation implicates a fundamental right, we apply strict scrutiny-which means the constitutional right may not be impaired absent the showing of a compelling state interest, and the statute or regulation must be closely tailored to effectuate only that compelling state interest by the least onerous path available. Wadsworth, 275 Mont. at 302, 911 P.2d at 1174; Armstrong v. State, 1999 MT 261, ¶ 34, 296 Mont. 361, 989 P.2d 364; Mont. Envtl. Info. Ctr. v. Dept. of Envtl. Quality, 1999 MT 248, ¶¶ 59-63, 296 Mont. 207, 988 P.2d 1236; Snetsinger, ¶ 17. With today’s Opinion, the Court turns each of these firmly established principles on its head.
¶52 The real question in this appeal-setting aside the threshold justiciability issue-is not what level of scrutiny applies. As stated, strict scrutiny applies to any rights contained in the Declaration of Rights. The question, rather, is whether the constitutional provisions upon which Plaintiffs rely include the rights they claim. In this regard, I have grave concerns with the Court’s suggestions that the rights enumerated in Article II, Section 3 are circumscribed by the State’s police power. See e.g. Opinion, ¶¶ 21, 22; see also Opinion, ¶ 30 (implying that the right to privacy is also circumscribed by the police power). If this proposition were true, then the constitutional rights at issue would be rendered meaningless. After all, the Montana Constitution generally, and the Declaration of Rights especially, serve as a restraint on governmental power. See Cruse v. Fischl, 55 Mont. 258, 263, 175 P. 878, 880 (1918) (“our Constitution is ... a limitation upon the powers of government”); State ex rel. James v. Aronson, 132 Mont. 120, 127, 314 P.2d 849, 852 (1957) (“the State Constitution is a limitation upon the power of the legislature and not a grant of power to that body”). Such restraint does not exist if, as the Court appears to hold, the parameters of constitutional rights are dictated by the State’s police power as defined by changing compositions of the legislative and executive branches. Again, the Montana Constitution is the supreme law of this State and its mandate must be followed by each of the three branches of government-not the other way around. Associated Press, 246 Mont. at 391, 804 P.2d at 379.
¶53 In this regard, I believe the Court overreads our decision in Wiser v. State, 2006 MT 20, 331 Mont. 28, 129 P.3d 133. There, the appellant denturists claimed they had a fundamental right to practice denturity “free of regulation.” Wiser, ¶ 21. We rejected that claim, noting that the State has police power to regulate for the health and welfare of its citizens and that the fundamental right to pursue employment and life’s *242 other “basic necessities” is subject to the State’s power to protect the public’s health and welfare. Wiser, ¶ 24. We also noted that the regulatory provision at issue did not bar denturity; to the contrary, it left the appellants free to pursue the profession. Wiser, ¶ 22. Our holding was simply that “while one does have the fundamental right to pursue employment, one does not have the fundamental right to practice his or her profession free of state regulation promulgated to protect the public’s welfare.” Wiser, ¶ 24.1 signed the Wiser opinion and still agree with this holding. I disagree, however, with the Court’s expansion of Wiser’s holding in the present case to stand for the proposition that the parameters of the Article II, Section 3 rights are dictated, circumscribed, or trumped by the State’s police power.
¶54 In my view, Plaintiffs’ constitutional claims may be resolved on a much narrower ground. The Supremacy Clause, again, dictates that federal law “shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.” U.S. Const, art. VI, cl. 2. In my view, it is wholly implausible to suggest that Article II, Sections 3 and 10 guarantee the right to engage in conduct which federal law proscribes-here, selling and using marijuana. Indeed, Article II, Section 3 recognizes “the rights of pursuing life’s basic necessities, enjoying and defending their lives and liberties, acquiring, possessing and protecting property, and seeking their safety, health and happiness in all lawful ways” (emphasis added). And the Court itself recognizes, near the end of the Opinion, that “Plaintiffs cannot seriously contend that they have a fundamental right to medical marijuana when it is still unequivocally illegal under the Controlled Substances Act.” Opinion, ¶ 32. This is more than enough to revolve Plaintiffs’ claims, and I thus question the judiciousness of the Court’s discussion of the State’s police power, not to mention the Court’s wholesale adoption of federal and out-of-state caselaw to interpret and limit the constitutional rights at issue. It is unnecessary to assess whether Montana’s medical marijuana laws pass muster under the Montana Constitution. Because federal law and the Supremacy Clause render Plaintiffs’ activities unlawful regardless, they have no state constitutional rights to vindicate in this case.
IH. Conclusion
¶55 For the foregoing reasons, I would vacate the District Court’s decision and remand with instructions to dismiss this action. I dissent from the Court’s contrary resolution of this case.

 Schrodinger’s cat was both alive and dead until its box was opened. See Denke v. Shoemaker, 2008 MT 418, ¶ 78 n. 2, 347 Mont. 322, 198 P.3d 284 (citing E. Schrodinger, Die gegenwartige Situation in der Quantenmechanik, 23 Die Naturwissenschaften 807-12, 823-28, 844-49 (1935)).

 In full, the Supremacy Clause states: “This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.” U.S. Const, art. VI, cl. 2.